## JUNEAU HARDWARE CO v. TROY, COLLECTOR.

(First Division. Juneau. June 13, 1921.)

No. 2077-A.

**1. Territories ⬦18—Constitutional Law.**

Section 27 of the act of Congress entitled "An act to provide for the promotion and maintenance of the American merchant marine," etc., approved June 5, 1920, provides: "That no merchandise shall be transported by water, or by land and water, on penalty of forfeiture thereof, between points in the United States, including districts, territories, and possessions thereof embraced within the coastwise laws, either directly or via a foreign port, or for any part of the transportation, in any other vessel than a vessel built in and documented under the laws of the United States and owned by persons who are citizens of the United States, or vessels to which the privilege of engaging in the coastwise trade is extended by sections 18 or 22 of this act: Provided, that this section shall not apply to merchandise transported, between points within the continental United States, excluding Alaska, over through routes heretofore or hereafter recognized by the Interstate Commerce Commission for which routes rate tariffs have been or shall hereafter be filed with said commission when such routes are in part over Canadian rail lines and their own or other connecting water facilities." The plaintiff caused a shipment of goods from an Eastern United States point to be made via the Grand Trunk Pacific Railroad, across Canada, to Prince Rupert, and thence to Juneau, Alaska, by Canadian steamship. The collector of customs seized the shipment and took steps to forfeit the same to the United States under the above statute; this suit was brought for injunction to prevent such forfeiture upon the ground that the above-quoted section of the act of Congress was unconstitutional as being in contravention of subsection 6 of section 9, art. 1, of the Constitution, which provides: "No preference shall be given by any regulation of commerce or revenue to the ports of one state over those of another." On demurrer to the complaint, *held*, the provision of the Constitution has reference only to the ports of the states, and it has no application to the ports of a territory, and the act is constitutional and valid.

**2. Territories ⬦13—Alaska.**

Alaska has been incorporated into and is a part of the United States, but it is a territory, and not a state, and it is governed by Congress by virtue of that clause of the Constitution which provides that Congress has power "to dispose of and make all needful rules and regulations respecting the territory or other property of the United States."

⬦See same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

3. **Territories** ⚖️11—**Constitutional Law—Power of Congress over Alaska.**

> Congress has the power, if it chooses to exercise it, to absolutely close, not only the port of Juneau, Alaska, but all the ports of Alaska. It may prohibit all commercial intercourse with Alaska. Having the power "to dispose of" the territory, it may dispose of any part thereof. It has the power to prescribe that all commercial intercourse with Alaska shall be had by means of vessels of American ownership and registry.

John Rustgard, of Juneau, for plaintiff.

James A. Smiser and Walter Schaffner, both of New York City, for defendant.

JENNINGS, District Judge. This is a suit for an injunction to restrain the collector of customs of the port of Juneau from taking proceedings to forfeit certain merchandise alleged to be in transit to Juneau in a ship of foreign registry and ownership, and consigned to the Juneau Hardware Company. It is alleged that the collector threatens to take steps to have said shipment forfeited on account of the fact that said shipment is being made in violation of section 27 of the act of Congress of June 5, 1920, entitled "An act to provide for the promotion and maintenance of the American merchant marine, to repeal certain emergency legislation, and provide for the disposition, regulation, and use of property acquired thereunder, and for other purposes" (page 988, 41 Stat. 1919–1920, 2d Sess. 66th Cong.), which said section provides as follows:

"That no merchandise shall be transported by water, or by land and water, on penalty of forfeiture thereof, between points in the United States, including districts, territories, and possessions thereof embraced within the coastwise laws, either directly or via a foreign port, or for any part of the transportation, in any other vessel built in and documented under laws of the United States and owned by persons who are citizens of the United States, or vessels to which the privilege of engaging in the coastwise trade is extended by sections 18 or 22 of this act: Provided, that this section shall not apply to merchandise transported between points within the continental United States, excluding Alaska, over through routes heretofore or hereafter recognized by the Interstate Commerce Commission for which routes rate tariffs have been or shall hereafter be filed with said commission when such routes are in part

⚖️See same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

over Canadian rail lines and their own or other connecting water facilities."

· To the amended complaint in the case a demurrer has been interposed on the ground that the said amended complaint does not state facts sufficient to constitute a cause of action. In support of the demurrer it is argued: (1) That there is no allegation in the amended complaint that the route over which the shipment in question is proposed to be sent is a route for which the Interstate Commerce Commission has prescribed rate tariffs, and hence does not come within the proviso of the act; (2) that, even if it were true that the said route was one for which the Interstate Commerce Commission has prescribed a rate tariff, still the amended complaint states no facts showing that the act in question is unconstitutional.

I think both points are well taken. As to the first one, it may be observed that, if the particular shipment in question is not coming over a route for which the Interstate Commerce Commission has prescribed tariff rates, then the matter does not come within the proviso of the statute, and the said shipment and Alaska are not discriminated against in any way whatsoever.

As to the second point, to wit, the question of the constitutionality of the above-entitled act, commonly known as the "Jones Shipping Bill," the contentions of the respective parties are as follows: Plaintiffs contend that section 27 of said act—

"violates the demand for equality placed upon the congressional enactments by subsection 6 of section 9 of article 1 of the Constitution, which provides:

"'No preference shall be given by any regulation of commerce or revenue to the ports of one state over those of another; nor shall vessels bound to, or from, one state, be obliged to enter, clear, or pay duties in other.'"

And they rely largely upon the opinion of the majority of the court in the case of Downes v. Bidwell, reported in 182 U. S. 244, 21 Sup. Ct. 770, 45 L. Ed. 1088, where the court had under consideration the question as to whether or not the Foraker Act (31 Stat. 77), in imposing duties upon merchandise shipped from Porto Rico, was constitutional. It was urged that, although the court in that case declared that Con-

gress had the right to levy duties upon goods shipped from Porto Rico, yet it had that right, because Porto Rico had not been "incorporated" in the United States, and remarks of the court are cited which, it is alleged, show that, if Porto Rico had been incorporated in the United States, the Foraker Act would have been in violation of that provision of the Constitution (article 1, § 8) which prescribes that all "duties, imposts, and excises shall be uniform throughout the United States." The argument proceeds that, as Alaska has been incorporated in the United States, the Constitution applies here in full force, and so the Jones Act, by discriminating against the ports of Alaska, is obnoxious to that prohibition against the preferring of the ports of one state to another.

On the other hand, defendant contends that, Alaska not being a state of the Union, the clause alleged to have been contravened is inapplicable.

The argument advanced by plaintiffs would be conclusive if the language of the two sections of the Constitution were the same, but they are not the same. The section as to the uniformity of duties, imposts, and excises prescribes that such duties, etc., shall be "uniform throughout the United States"; whereas the section prohibiting preferences between the ports of the states refers only "to the ports of one state over those of another."

When Alaska became incorporated in the United States, it became a part thereof, it is true, but nevertheless it sustained a different relation to the whole United States from that which the states themselves occupied. In speaking of the power to lay and collect duties, imposts, and excises, Chief Justice Marshall said, in the case of Loughborough v. Blake, 5 Wheat. 317, 5 L. Ed. 98:

"The power, then, to lay and collect duties, imposts, and excises may be exercised, and must be exercised, throughout the United States. Does this term designate the whole, or any particular portion of the American empire? Certainly this question can admit of but one answer. It is the name given to our great republic, which is composed of states and territories. The District of Columbia, or the territory west of the Missouri, is not less within the United States than Maryland or Pennsylvania; and it is not less necessary, on the principles of our Constitution, that uniformity in the imposition of imposts, duties, and excises should be observed in the one than in the other."

To say that a certain thing must prevail throughout the United States would, of course, include Alaska, because Alaska is a part of the United States; but the Constitution was adopted as a compact between independent states, 13 of them originally. The principles of government enunciated in that Constitution were new in the domain of political science. No such scheme of government had ever existed before. It was not without many misgivings as to the power conferred upon the federal government that the original 13 colonies ratified that instrument. The individual colonies were proud of their respective sovereignties and fearful lest the federal government might absorb more of that sovereignty than they were willing to part with. They therefore hedged about their grant of power in every particular in which they thought limitations should be imposed. They were fearful that discriminations might be made in favor of larger or more prosperous states as against the smaller or less prosperous states; and they therefore insisted that in all the provisions as to the regulation of interstate commerce the states should be treated equally. The provision of the Constitution which it is alleged section 27 of the Jones Shipping Bill contravenes was not a prohibition relating to the territories of the United States; it had to do only with the states of the Union.

"The Constitution was created by the people of the United States, as a union of states, to be governed solely by representatives of the states; and even the provision relied upon here, that all duties, imposts, and excises shall be uniform 'throughout the United States,' is explained by subsequent provisions of the Constitution, that 'no tax or duty shall be laid on articles exported from any state,' and 'no preference shall be given by any regulation of commerce or revenue to the ports of one state over those of another; nor shall vessels bound to or from one state be obliged to enter, clear or pay duties in another.' In short, the Constitution deals with states, their people, and their representatives." Downes v. Bidwell, supra, 182 U. S. 251, 21 Sup. Ct. 773, 45 L. Ed. 1088.

In dealing with foreign sovereignties, however, the term United States—

"has a broader meaning than when used in the Constitution, and includes all territories subject to the jurisdiction of the federal government, wherever located. In its treaties and conventions with foreign nations this government is a unit  This is so, not because the territories comprised a part of the government established by the people of the states in their Constitution, but because the federal

government is the only authorized organ of the territories, as well as of the states, in their foreign relations." 182 U. S. 263, 21 Sup. Ct. 77, 45 L. Ed. 1088.

But it is contended that, because Justice White has given a historical review of proceedings in the convention which resulted in the adoption of different clauses relating to interstate commerce and their arrangement, and there comes to the conclusion that, "although the provisions as to preference between ports and that regarding the uniformity of duties, imposts, and excises were one in purpose and one in adoption, and were originally placed together and became separate only in arranging the Constitution for the purpose of style," etc., therefore the two expressions are identical in meaning. Even if the contention be sound, yet the Supreme Court in Downes v. Bidwell, supra, expresses itself thus:

"Construed together, the purpose is irresistible that the words 'throughout the United States' are indistinguishable from the words 'among or between the several states,' and that these prohibitions were intended to apply only to commerce between ports of the several states as they then existed or should thereafter be admitted to the Union."

Again, Alaska has indeed been incorporated in, and is a part of, the United States, and the Constitution is in full force here, Rasmussen v. U. S., 197 U. S. 526, 25 Sup. Ct. 514, 49 L. Ed. 862), but that fact does not change Alaska from being a territory into being a state, nor render applicable to Alaska those provisions of the Constitution which have to do only with the states, albeit the provision "throughout the United States" means throughout every part and parcel "of the great American empire." Besides, that very Constitution provides that Congress has power "to dispose of and make all needful rules and regulations respecting the territory or other property belonging to the United States." Constitution, art. 4, § 3, cl. 2. Can it be doubted that, under the power thus conferred, Congress has the power, if it chooses to exercise it, to absolutely close, not only the port of Juneau, but all the ports of Alaska? Could it not, if it so chose, prohibit all commercial intercourse with Alaska? Having been given the power "to dispose of" the territory, could it not dispose of any part thereof? He who denies the existence of this power would have a hard time explaining what is meant by the words "shall have

6 A.R.—24

power to dispose of." If Congress has the power to dispose of Alaska, or the power to prohibit commercial intercourse with Alaska, can it be argued 'that it has not the power to prescribe that such commercial intercourse as is to be had with Alaska shall be had by means of vessels of American ownership and registry?

I very much regret that the time occupied daily in the trial of cases precludes any more exhaustive opinion on. my part than is here contained. However, the fact that the opinion is in favor of the constitutionality of the act does not call for any extended exposition of my view on the subject.

The demurrer will be sustained.

☜See same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes