SCHOOL DISTRICT NO. 4 OF THE TOWN OF LA FOLLETTE and others, Appellants, vs. COUNTY SCHOOL COMMITTEE OF BURNETT COUNTY and others, Respondents.

*November 3—December 2, 1952.*

For the appellants there was a brief by *Doar & Knowles* of New Richmond, and oral argument by *John Doar*.

For the respondents there was a brief by *C. J. Strang,* district attorney of Burnett county, and *E. Nelton* of Balsam Lake, and oral argument by *Mr. Nelton*.

FAIRCHILD, J.  Appellants call attention to the fact that prior to 1939 school-district reorganization in Wisconsin was based on the theory of voluntary action by the school districts. While this is true, the establishing of school districts and provisions for changing the boundaries of existing districts were always a subject of legislation, and the legislature may vest such power in proper boards or officers.

In 1939 the legislature, by ch. 228, Laws of 1939, provided that an elector could petition the municipal governing body for a reorganization. Sec. 40.30 (1), Stats. That chapter also gave to the state superintendent of public instruction the power to attach districts with valuations of less than $100,000 "to contiguous districts." The state superintendent's actions under that authority were challenged, and the matter was finally brought here for determination. See *School Dist. v. Callahan,* 237 Wis. 560, 567, 297 N. W. 407. The rule with relation to alteration or abolition of districts was recognized as valid, and the court held that: ". . . the formation of school districts and the power to exercise discretion in determining whether such district shall be altered

by consolidation or otherwise is not such an exclusive legislative function as may not be delegated to the state superintendent [of public instruction], as well as to town boards; and that this power may be delegated without any standard whatsoever to guide in the exercise of the power delegated." In the opinion, Mr. Justice FRITZ quoted with approval from the opinion in *State ex rel. Moreland v. Whitford,* 54 Wis. 150, 155, 156, 11 N. W. 424, as follows:

"The duty of forming and altering school districts is purely municipal, administrative, and ministerial, . . . and has no respect whatever to personal or property rights. . . . The state superintendent appears to have acted in strict compliance with law and the rules of his department, and there does not appear to have been any constitutional provision violated, . . . in giving him such a jurisdiction. . . ."

See also *State ex rel. Horton v. Brechler,* 185 Wis. 599, 202 N. W. 144. Following the decision of the *Callahan Case, supra,* in 1949, the statutes here under consideration were enacted.

The time for appealing from an order of the County School Committee is regulated by statute, and the regulation is set forth in the following language in sec. 40.303 (9):

"All orders of the county school committee creating, altering, consolidating, or dissolving school districts shall be final except that a referendum election may be had upon them as provided in subsection (8) and except that any person aggrieved by any order of a county school committee issued and recorded pursuant to the provisions of this section . . . may appeal therefrom to the circuit court of the county in which the territory described in the petition lies, . . . within thirty days following the issuing and recording of any order, . . ."

The question raised on this appeal is as to whether the appellants took their appeal from the order reorganizing the school district within the time fixed by law. It is argued that because such an order will not be effective until after

a referendum has been held there is an indication that the legislature intended to fix the time for appeal from the order at a date after the referendum. But the 1949 enactment fixes the time for an appeal at thirty days from the issuing and recording of the order.

There is no occasion for questioning the date at which the time for appeal began to run. It was May 18, 1951, and the notice of appeal was not served until long after the thirty-day period had passed. The fact that the legislature provides for an appeal and a review by a court is not modified, so far as the legality of the order is concerned, by the provision for a referendum. There is an appeal to the court, and also there is provided a referendum from which the opinion of the people of the new or reorganized district may be learned and which is to be determinative if opposed to the order. However, if the referendum approves of the order, review on appeal to the court can still, if taken within thirty days, be available to an aggrieved person. An expression by a majority of an adverse opinion overrules the proceeding and prevents further consideration of the reorganization for a specified time. But the appeal to the court and the referendum are separate and distinct proceedings, carried out by the methods set forth in the statutes.

The matter was very substantially stated in the memorandum opinion of the learned trial judge as follows:

"An examination of the notice of appeal reveals that the appeal is from the order of the school committee dated May 18, 1951, on the grounds that it was void and not effective because of the referendum election held on July 2, 1951.

"It seems to us that the wording of the statute, to wit, subsection (9) of section 40.303 is clear, that the appeal may be had within thirty days following the issuing and recording of any order. The statute does not say within thirty days after a referendum election was had, but clearly states thirty days after the issuing and recording of the order."

It is considered that the trial court is correct in ruling that the appeal was not timely, and properly ordered the dismissal of the appeal.

*By the Court.*—Order affirmed.