VILLAGE OF WEST MILWAUKEE and another, Plaintiffs and Appellants: CITY OF ST. FRANCIS and others, Intervening Plaintiffs and Appellants, v. AREA BOARD OF VOCATIONAL, TECHNICAL AND ADULT EDUCATION (DISTRICT 9), Defendants and Respondents.

*No. 413. Argued May 7, 1971.—Decided June 2, 1971.*
(Also reported in 187 N. W. 2d 387.)

358

For the appellants there were briefs by *Peregrine, Marcuvitz, Cameron, Braun & Peltin,* attorneys, and *Hugh R. Braun* of counsel, all of Milwaukee, and oral argument by *Hugh R. Braun.*

For the respondent there was a brief by *Quarles, Herriott, Clemons, Teschner & Noelke,* attorneys, and *James A. Urdan* and *Steven R. Duback* of counsel, all of Milwaukee, and oral argument by *Mr. Urdan.*

Pursuant to sec. 269.56 (11), Stats., the cause was argued in support of the respondent by *John William Calhoun,* assistant attorney general, with whom on the brief was *Robert W. Warren,* attorney general.

A brief amici curiae was filed by *Goldberg, Previant & Uelmen* of Milwaukee, for the Wisconsin State AFL-CIO, Milwaukee Building and Construction Trades Council and Milwaukee County Labor Council.

WILKIE, J. Before reaching the issues raised on the merits which go first to the constitutionality of sec. 38.155, Stats., and second to whether there was compliance with the requirements of that section when the various corporate municipal appellants were added to District 9, we must consider the threshold questions raised by the respondent as to plaintiffs' standing to bring this action and to raise the constitutional issues.

## 1. *Standing of plaintiffs.*

Respondent contends that the corporate municipal appellants in this case have no standing to bring the present

action since they are not the real parties in interest. We agree.

In *State ex rel. City of Sheboygan v. Sheboygan County*,[5] the city of Sheboygan sought judicial review of the action of the county board in levying a tax for highway purposes; this court held the city had no standing to maintain certiorari to set aside the tax.

"The city was only one of the agencies through which the county collected the tax from the individual taxpayer resident of the city. The city had no such interest in the validity of this tax as to authorize it to maintain an action to set it aside. The tax does not affect the revenues of the city in the least. The city's property is not subject to taxation. But the tax does, immediately and directly, affect each taxpayer to the amount of his tax. The general tax is not a debt against the city, but is a direct charge upon the taxpayer. The city was not the real party in interest." [6]

In *In re Application of Racine* [7] this court held the city of Racine had no standing to seek to enjoin the enforcement of a gasoline tax, and in *Appleton v. Outagamie County*,[8] this court held the municipality had no standing to seek the restraining of its treasurer from paying over to the county taxes collected but allegedly illegal.

Here it is plain from the statute that the municipalities are only the collectors of the taxes levied by the district boards against the property of their citizens.[9] In addition, all of the challenges raised on this appeal are to matters affecting taxpayers personally, not the municipalities as such, *e.g.*, representation, power of district boards to tax, etc.

[5] (1928), 194 Wis. 456, 216 N. W. 144.
[6] *Id.* at pages 458, 459.
[7] (1928), 196 Wis. 604, 220 N. W. 398, 221 N. W. 109.
[8] (1928), 197 Wis. 4, 220 N. W. 393.
[9] Sec. 38.155 (6), Stats.

Respondent also challenges the standing of the appellants-municipalities to raise the constitutional challenges in this action against a state agency, relying on this court's decision in *State ex rel. La Crosse v. Rothwell.*[10] In that case the city of La Crosse and other individual plaintiffs brought an action in the circuit court for Dane county for review by way of certiorari of an order joining certain territory lying outside of the city of La Crosse to the La Crosse city school district. The constitutionality of the statute authorizing such action was challenged. The following statement of the court in that case is in point:

"The state superintendent questions whether the city of La Crosse may raise the constitutionality of sec. 40.035, Stats. It is not contended the individual appellants do not have the capacity to raise such issue. The general rule has been that a municipality or state agency cannot question the constitutionality of a statute and was thoroughly discussed in *Columbia County v. Wisconsin Retirement Fund* (1962), 17 Wis. 2d 310, 116 N. W. 2d 142. See also *Marshfield v. Cameron* (1964), 24 Wis. 2d 56, 127 N. W. 2d 809. The general rule is subject to two exceptions: (1) If it is the agency's official duty to do so, or the agency will be personally affected if it fails to do so and the statute is held invalid, and (2) if the issue is of 'great public concern.'

"The appellants argue the constitutional question is of great public concern, but in the *Columbia County Case* we pointed out these exceptions apply only to cases between private litigants and a municipality or state agency and not to suits between agencies of the state, or between an agency or municipal corporation and the state. Here, a municipality is suing the state superintendent of public instruction and consequently the city of La Crosse has no capacity to raise the constitutionality of the statute. *However, so far as the constitutional question affects the rights of the individual appellants, such question is properly before us.*" (Emphasis added.)[11]

[10] (1964), 25 Wis. 2d 228, 130 N. W. 2d 806, 131 N. W. 2d 699.
[11] *Id.* at page 233.

Thus, although the corporate municipal plaintiffs do not have standing to commence this action or to raise the constitutional issues they have asserted, those issues are properly raised by the individual appellants and must be considered.

Appellants attack the constitutionality of sec. 38.155, Stats., on many grounds. None has merit. The Wisconsin vocational education system, organized and operating pursuant to sec. 38.155, is clearly constitutional. In 1911 Wisconsin was the first state to adopt a comprehensive system of vocational training. It has been one of the most outstanding systems in the nation. The reorganization accomplished by the 1965 legislation contemplates extending vocational education to every corner of the state.

## 2. *Art. IV, sec. 1, Wisconsin Constitution.*

The major challenge made to the constitutionality of sec. 38.155, Stats., is that there is a delegation of legislative power in violation of art. IV, sec. 1 of the Wisconsin Constitution, which provides:

"**Legislative power.** SECTION 1. The legislative power shall be vested in a senate and assembly."

Specifically, appellants' principal contention is that the power to levy taxes given the district boards in sec. 38.155 (6), Stats., is a violation of this constitutional provision because under that provision the taxing power belongs exclusively to the legislature. We disagree.

In approaching this constitutional question, as also the other constitutional challenges to sec. 38.155, Stats., we first apply the elementary rule that a statute ordinance is presumed to be constitutional unless the contrary is established beyond a reasonable doubt.[12]

---

[12] *J & N Corp. v. Green Bay* (1965), 28 Wis. 2d 583, 585, 137 N. W. 2d 434, and cases cited therein.

Appellants point to *State ex rel. Carey v. Ballard* [13] and *Chicago & Northwestern Ry. v. State,* [14] to support their contention that the taxing power resides in the legislative branch and that it may not be improperly delegated to an administrative board. In *Carey* this court stated:

". . . The adjudications on the subject clearly establish that the tax power must be exerted by the legislative branch of the government either directly or through the officers of a political subdivision, who act in their capacity of legislative representatives of the people to be taxed, and that they are required to exercise their discretion and judgment as to the necessity and amount of the tax to be imposed. . . ." [15]

But *Carey* is readily distinguishable, since in that case the legislature had granted to "any group of freeholders" the power to compel the town board to make highway improvements whenever the board had failed to appropriate funds for such purpose at its annual meeting. Hence, "any group of freeholders" could determine both the "necessity and amount of the tax" without being responsible in any way to those on whom the tax was to be levied.

In *Chicago & Northwestern Ry. v. State,* the court noted:

"No one need argue to this court that the legislature cannot delegate to any mere administrative board power to determine how much money shall be appropriated, 'levied,' as the term is used, for state expenses, but we must not confuse the term 'levy' in the sense of voting a tax, or determining in gross how much shall be raised by taxing a particular class or general property, with the term 'levy' in the sense of merely performing the administrative duty of laying, on a legitimate basis, taxes

[13] (1914), 158 Wis. 251, 148 N. W. 1090.
[14] (1906), 128 Wis. 553, 108 N. W. 557.
[15] *State ex rel. Carey v. Ballard, supra,* footnote 13, at page 258.

previously levied, appropriated, or voted by the legislature." [16]

However, the fact that it is the legislature which must determine "the necessity and amount of the tax" or perform the act of "voting a tax, or determining in gross how much shall be raised," does not preclude entirely the levying of a tax by an administrative board. That such boards may properly do so in certain circumstances is well settled by the various sewerage commission cases wherein the legislature authorized appointed commissions to levy direct taxes upon all taxable property in a particular district. In all these cases the delegation of authority was upheld against unconstitutional attack.

In *Thielen v. Metropolitan Sewerage Comm.*,[17] the appointed body did not levy the tax itself, but certified to the county board the amount of funds needed and the county then raised the funds through issuing bonds and then levying a tax to pay off the bonds. The court noted that this was essentially the same as the appointive body itself levying the tax, since the county board could exercise no discretion in the matter. This court nevertheless upheld the delegation as constitutional. After distinguishing *Carey*, this court stated:

". . . By the provisions of sub. 6, sec. 1, ch. 554, the *Metropolitan Sewerage Commission* is required to project, plan, construct, and maintain first-class main sewers. The *Commission* itself does not determine whether or not this shall be done. The legislature has determined it for them and has committed the execution of the legislative plan to the *Metropolitan Sewerage Commission*. . . . The amount which the *Metropolitan Sewerage Commission* is authorized to certify is that amount which is necessary to carry out the legislative scheme. *The taxing power of the state is exerted through the Metropolitan Sewerage Commission and the various governing bodies and officers of the various municipalities by the legisla-*

---

[16] *Supra,* footnote 14, at page 629.
[17] (1922), 178 Wis. 34, 189 N. W. 484.

*ture, and the funds raised in the manner specified can be disbursed for the purposes specified in the act and no other."* (Emphasis added.) [18]

In *Golden v. Green Bay Metropolitan Sewerage Dist.,*[19] a constitutional attack was lodged against a statute which authorized a sewerage commission of three members appointed by the court which created the district itself to levy a direct tax upon all the property in the district. This court rejected the constitutional objections relying on *Thielen* and distinguishing *Carey* and *Chicago & Northwestern Ry., supra.*

And in *State ex rel. Milwaukee Sewerage Comm. v. Supervisors,*[20] which involved the identical fact situation as that presented in *Thielen,* this court stated:

". . . The statute has vested in the Sewerage District the complete power to plan, construct, and maintain sewers, and to call upon the county to issue bonds. It has given the county board no discretion to refuse to issue the bonds. . . . The wisdom of the whole matter was for the legislature. It has indicated its position clearly. The desirability of extending the sewerage system, and its relation to the health of the people of the district involved, is vested by the legislature for determination solely in the Sewerage Commission." [21]

While sec. 38.155, Stats., concerns itself with a wholly different function, we think the reasoning of the sewerage commission cases is controlling here on this question and the delegation of the power to levy the property tax under sec. 38.155 (6) to the area board is entirely constitutional as against the challenge of improper delegation of legislative power contrary to art. IV, sec. 1 of the Wisconsin Constitution.

---

[18] *Id.* at page 54.
[19] (1933), 210 Wis. 193, 246 N. W. 505.
[20] (1933), 211 Wis. 412, 248 N. W. 454.
[21] *Id.* at page 418.

Appellants also rely heavily on the Pennsylvania case of *Wilson v. Philadelphia School Dist.*,[22] which held unconstitutional a statute of that state authorizing certain appointed school boards to levy taxes to raise funds necessary to operate the schools under their jurisdiction. However, appellants misconstrue the court's holding in that case and ignore other cases decided by the same court upholding delegations of authority similar to that in sec. 38.155, Stats.

In *Wilson* the court held the delegation improper since *there was no limitation on the right to levy the tax.* The court recognized its earlier decision in *Minsinger v. Rau*,[23] and distinguished it. In *Minsinger* the legislature had provided that certain appointive school boards could levy a tax of "not . . . less than five nor more than six mills on the dollar of the total assessment. . . ." [24] The court held such delegation was constitutional, stating:

". . . The objection that under the School Code the taxing power in districts of the first class is to be exercised by nonelective boards, is more apparent than real. . . . Practically the legislature itself has fixed the tax levy at a maximum of six mills and simply leaves to its agents the privilege of collecting not less than five mills in any one year; this cannot properly be objected to as unrepublican or as an unlawful delegation of legislative power to an unrepresentative body." [25]

The principles of *Minsinger* have been repeatedly affirmed by the Pennsylvania court both before and after *Wilson.* For example, in *Moore v. Pittsburgh School Dist.*,[26] the court stated:

". . . The proposition that there is no unlawful delegation of the legislative power to tax *where the legisla-*

[22] (1937), 328 Pa. 225, 195 Atl. 90.
[23] (1912), 236 Pa. 327, 84 Atl. 902.
[24] *Id.* at page 332.
[25] *Id.*
[26] (1940), 338 Pa. 466, 13 Atl. 2d 29.

*ture has fixed the maximum limit* of the tax is settled by our decision in *Minsinger v. Rau . . . .*" (Emphasis added.) [27]

Rather than supporting appellants' position on this point, we conclude that the Pennsylvania cases are additional authority for upholding the delegation of authority with respect to taxes under sec. 38.155, Stats.

In the instant case the legislature has authorized a levy not to exceed two mills. In addition, the legislature has carefully provided the purposes for which such taxes are to be levied. The district boards, in their discretion, determine the amount of the levy. This discretion is circumscribed by the legislature's determination of the purposes and the maximum amount of the levy. [28]

Appellants also contend that contrary to art. IV, sec. 1 of the Wisconsin Constitution, the district boards are given authority to operate the various vocational schools without any safeguards against the improper exercise of that authority.

True, this court has held that the legislature may not grant an administrative agency "unlimited legislative power." It is also clear that whatever power is granted must be exercised in accordance with the standards and limitations fixed by the legislature, and the exercise, of course, may not impair the constitutional rights of a

[27] *Id.* at page 470. *See also: Evans v. West Norriton Township Municipal Authority* (1952), 370 Pa. 150, 157, 87 Atl. 2d 474; *Walsh v. Philadelphia School Dist.* (1941), 144 Pa. Super. Ct. 321, 19 Atl. 2d 598, affirmed *per curiam,* 343 Pa. 178, 22 Atl. 2d 909.

[28] In a Nebraska case involving vocational school districts in which appointive boards were authorized to levy between six and eight mills, the supreme court of that state upheld the delegation as constitutional. *Campbell v. Area Vocational Technical School* (1968), 183 Neb. 318, 159 N. W. 2d 817. In this case, however, the state constitution provided for the levy and collection of taxes "as the legislature may direct."

citizen.[29] However, the standard required was defined recently in general terms by this court in *Watchmaking Examining Board v. Husar:* [30]

" . . . In *State ex rel. Wisconsin Inspection Bureau v. Whitman* (1928), 196 Wis. 472, 505, 220 N. W. 929, we delineated the kind of legislative power which may be delegated from that which may not be delegated. We said:

" 'The power to declare whether or not there shall be a law; to determine the general purpose or policy to be achieved by the law; to fix the limits within which the law shall operate,—is a power which is vested by our constitutions in the legislature and may not be delegated. When, however, the legislature has laid down these fundamentals of a law, it may delegate to administrative agencies the authority to exercise such legislative power as is necessary to carry into effect the general legislative purpose . . . . ' " [31]

Here, in sec. 38.155, Stats., the legislature has carefully stated the purpose of the legislation; the extent of the control of the district boards and the manner of exercising it; the kinds of persons to be appointed and the manner of their appointment; the maximum tax which may be levied; the manner of acquiring and keeping property; etc. A review of the statute makes manifest the painstaking detail with which the legislature circumscribed the authority delegated to the state and district vocational boards.

Appellants also assert that the Wisconsin Constitution (art. IV, sec. 1) strikes down the authority of the state board to create vocational districts where that authority is not circumscribed by any legislative policy or guidelines as to number or size; provides for no public hearings on the matter; makes no provision for appeal—in

---

[29] *Clintonville Transfer Line v. Public Service Comm.* (1945), 248 Wis. 59, 21 N. W. 2d 5.

[30] (1971), 49 Wis. 2d 526, 182 N. W. 2d 257.

[31] *Id.* at page 534.

short, that the delegation amounts to "administrative absolutism."

But appellants concede that the creation of school districts is an administrative function, not a legislative function.[32] In *School Dist. v. Callahan* this court was presented with a challenge to a statute authorizing the state superintendent of public instruction to alter school districts on the ground that it was an unconstitutional delegation of legislative authority because the statute provided no standard to guide him. This court rejected the argument stating:

"These contentions cannot be sustained in view of the established rules that the formation of school districts and the power to exercise discretion in determining whether such districts shall be altered by consolidation or otherwise is not such an exclusive legislative function as may not be delegated to the state superintendent, as well as to town boards; and that this power may be delegated without any standard whatsoever to guide in the exercise of the power delegated." [33]

In the later case of *Zawerschnik v. Joint County School Comm.*[34] this court simply stated:

". . . The legislature may vest power in proper boards or officers to establish school districts and change the boundaries of existing districts. *School Dist. v. Burnett County School Comm.* (1952), 262 Wis. 484, 55 N. W. 2d 874." [35]

Appellants would distinguish these cases on the ground that the statutes there involved provided for judicial review. However, in light of this court's view of the complete power properly delegated, this right to review has

[32] *See, e.g., School Dist. v. Callahan* (1941), 237 Wis. 560, 297 N. W. 407; *State ex rel. Horton v. Brechler* (1925), 185 Wis. 599, 202 N. W. 144.

[33] *School Dist. v. Callahan, supra,* footnote 32, at page 567.

[34] (1955), 271 Wis. 416, 73 N. W. 2d 566.

[35] *Id.* at page 426. *See also: Burton v. State Appeal Board* (1968), 38 Wis. 2d 294, 156 N. W. 2d 386.

no substance. Certainly not insofar as the appellants seek review here.

Appellants' final challenge to sec. 38.155, Stats., as being in violation of art. IV, sec. 1 of the Wisconsin Constitution, concerns what they contend is the allegedly unconstitutional provision which permits the state board to determine the unit of government to appoint the members of the district boards. In doing so appellants merely conclude that such determination is exclusively a legislative function and is, therefore, improperly delegated. No authority is offered for this proposition.

However, a review of sec. 38.155 (5) (c), Stats., discloses that the legislature has specified three governmental units, one of which the state board may select as the appointing body, presumably in keeping with the determination of vocational districts in its master plan.

It must be noted that the legislature provided that any of three governmental units, *i.e.*, counties, municipalities, or school districts, might petition to be constituted a district or to be included within a particular district. In such a case the legislature carefully provided that the governing units initiating the action would be the appointive bodies, even providing for a combination of representatives should a combination of these governmental units apply in concert. Only if such action were not initiated would the board determine the appointing body. Only in such event might the board choose, in its discretion, one of the three governmental units specified by the legislature, and even then "Such designation shall be consistent with the intent of this subsection." [36]

Not only is the state board's discretion sharply circumscribed in this matter of selection of the appointing governmental unit, but detailed guidelines are set down to assure that the seven district board members shall be representative of the total population of the govern-

---

[36] Sec. 38.155 (5) (c), Stats.

mental units within the district,[37] as well as representative of employers, employees, and the public generally.[38] Only if no agreement can be reached by the members of the appointing body within sixty days, can the state board itself make the appointments to the district board.

A review of sec. 38.155 (5), Stats., manifests the painstaking detail with which the legislature circumscribed the discretion of the board in the matter. Clearly the delegation of this authority is not unconstitutional as being unrestrained, even if one accepts appellants' contention that the appointment of district board members is strictly a legislative function. Every effort is made to provide for district boards which will represent the various interests and the population within the districts generally, and to do so by providing that representatives of the governmental units involved (*all of them elected by the citizenry of the districts*) might make the appointments. The state board is free to act only in event of default, and then only in a manner consistent with the purpose of the subsection.

### 3. *Art. X, sec. 6, and art. VIII, secs. 1 and 5, Wisconsin Constitution.*

Appellants contend that vocational education is peculiarly a state function under art. X, sec. 6 of the Wisconsin Constitution, and that to finance it through area boards violates art. VIII, secs. 1 and 5.

Art. X, sec. 6 provides:

"**State university; support.** SECTION 6. Provision shall be made by law for the establishment of a state university at or near the seat of state government, and for connecting with the same, from time to time, such colleges in different parts of the state as the interests of education may require. . . ."

---

[37] Sec. 38.155 (5) (c), Stats.

[38] Sec. 38.155 (5) (a), Stats.

We cannot agree that this provision of the state constitution makes *vocational education* exclusively a state function which must be supported only on a statewide basis, rather than on an area basis.

Art. X, sec. 3 provides:

"**District schools; tuition;** . . . . SECTION 3. The legislature shall provide by law for the establishment of district schools, which shall be as nearly uniform as practicable; and such schools shall be free and without charge for tuition to all children between the ages of four and twenty years; . . ."

If one were to accept appellants' reasoning with respect to art. X, sec. 6, then one would be forced to conclude that all district schools could not constitutionally be supported on an area basis, since *all education* is a state function, as this court has noted:

"The subject of public education and the establishment and operation of public schools is a governmental function of this state." [39]

If appellants' argument were accepted, the system of vocational education on a municipal basis (which appellants would gladly return to) would also be unconstitutional.

Appellants' contentions that vocational education is really exclusively a state function because (1) the statute dealing with vocational schools is found in Title VI of the statutes dealing with higher education; and (2) ch. 39, Stats., provides for a coordinating committee for higher education to coordinate the university, state universities, county teacher colleges, and *vocational schools* so that it might provide for "a single, consolidated, biennial budget request for the University of Wisconsin and the state universities," and *vocational schools*—both have little merit insofar as the constitutional challenge

---

[39] *State ex rel. Wisconsin Lutheran High School Conference v. Sinar* (1954), 267 Wis. 91, 97, 65 N. W. 2d 43.

is concerned. The legislature in its wisdom has determined that the interests of vocational education would be better served by financing the vocational schools on an area basis. There is nothing in art. X, sec. 6 which prohibits this. The constitution neither requires nor prohibits the creation of vocational schools, nor, therefore, does it provide for the method of financing the schools.

Further, it is not clear that the constitution requires the financing of state universities on a statewide basis. The constitution requires only that the legislature shall provide for the "establishment" of such colleges. The legislature has done so, and has provided for statewide financing. However, it is apparent under the constitution that the legislature might have divided the state into districts and established tuition-free state colleges in each district, with financing on an area basis, without offending art. X, sec. 6. However, the fact that the legislature did not do this does not make its present plan with respect to vocational education constitutionally invalid.

Therefore, it does not appear that the constitution in any way designates vocational education as a state expense, pursuant to art. VIII, secs. 1 and 5. These sections provide:

"**Rule of taxation uniform; income, privilege and occupation taxes.** SECTION 1. [As amended Nov. 1908, April 1927, April 1941 and April 1961] The rule of taxation shall be uniform but the legislature may empower cities, villages or towns to collect and return taxes on real estate located therein by optional methods. Taxes shall be levied upon such property with such classifications as to forests and minerals including or separate or severed from the land, as the legislature shall prescribe. Taxation of merchants' stock-in-trade, manufacturers' materials and finished products, and livestock need not be uniform with the taxation of real property and other personal property, but the taxation of all such merchants' stock-in-trade, manufacturers' materials and finished products and livestock shall be uniform, except that the

legislature may provide that the value thereof shall be determined on an average basis. Taxes may also be imposed on incomes, privileges and occupations, which taxes may be graduated and progressive, and reasonable exemptions may be provided."

"**Annual tax levy to equal expenses.** SECTION 5. The legislature shall provide for an annual tax sufficient to defray the estimated expenses of the state for each year; and whenever the expenses of any year shall exceed the income, the legislature shall provide for levying a tax for the ensuing year, sufficient, with other sources of income, to pay the deficiency as well as the estimated expenses of such ensuing year."

The decision to provide vocational education is a political determination to be made by the legislature, as is the method of financing. The fact that the legislature has previously financed vocational education on a municipal or statewide basis in no way prohibits them from constitutionally altering the method to one of area financing.

Art. VIII, sec. 5, provides that the legislature "shall provide for an annual tax sufficient to defray the estimated expenses of the state for each year . . . ." This provision does not provide the *method* which shall be used.

*State ex rel. Board of Education of Oshkosh v. Haben,*[40] which appellants cite as authority for their position, is clearly inapposite. In *Haben* the city of Oshkosh had accumulated a fund for the construction of a high school. A special statute also permitted the city to expend money for the establishment of a state normal school. This court held that the legislature could not then divert these funds for use in constructing a state normal school. This court has on other occasions held that the property or citizens taxed need not be directly benefited by the taxes levied.[41]

---

[40] (1868), 22 Wis. 629 (*660).

[41] *Rinder v. Madison* (1916), 163 Wis. 525, 158 N. W. 302; *Milwaukee County v. Halsey* (1912), 149 Wis. 82, 136 N. W. 139;

Similarly without merit is appellants' contention that sec. 38.155, Stats., violates art. VIII, sec. 1, because the area method of financing vocational education will require "citizens within the eighteen districts of the vocational system to pay different amounts based on different rates for the operation of a function of state government." Appellants cite no authority to support their contentions in this respect, nor does any exist.

Here, all the district boards are limited to a maximum two-mill levy. There is no allegation that taxpayers similarly situated within District 9 will be unequally taxed. That is the test. Sec. 38.155 (6), Stats., provides for proportional taxation of all municipalities within the district.

In *State ex rel. Owen v. Stevenson*,[42] this court rejected a similar contention. In *Stevenson*, the challenge was to a statute which authorized the building of bridges. A bridge was authorized by the state highway commission across the Wisconsin river, extending from the town of West Point in Columbia county to the village of Prairie du Sac in Sauk county. The action was brought to compel the authorities of Columbia county to appropriate funds to pay its share of construction costs.

The court noted that the statute in issue was enacted "as a part of the general policy to establish an efficient state highway system, and must be interpreted in the light of such legislative purpose."[43] Hence the court recognized that the bridge was a part of a *state* highway system, just as appellants contend a *state* vocational system is here involved.

In that case the court rejected the contention that the statute violated art. VIII, sec. 1, Wisconsin Constitution, because residents of Dane county who would benefit

---

*Lund v. Chippewa County* (1896), 93 Wis. 640, 67 N. W. 927; *Land, Log & Lumber Co. v. Brown* (1889), 73 Wis. 294, 40 N. W. 482.

[42] (1917), 164 Wis. 569, 161 N. W. 1.

[43] *Id.* at page 573.

from the bridge were exempt from taxation for its construction, and because residents of the cities of Portage and Columbus who were required to also maintain bridges without state aid would also be required to contribute to the construction of the bridge since they were a part of the county, thereby being subjected to an unequal burden in maintaining public bridges generally.

". . . [I]f the provisions of sec. 1321a, Stats., operate unequally in the imposition of tax burdens, that is a matter for legislative consideration. Want of uniformity of taxation does not exist in a *local sense* unless a different rate of taxation is imposed on like property within the same jurisdiction." [44]

In the instant case there is no allegation that different taxpayers within the district will be assessed at a different rate, nor that the rate imposed on the different municipalities will be disproportionate. The statute requires the opposite.

4. *Fifth and fourteenth amendments to the United States Constitution and art. I, sec. 1 of the Wisconsin Constitution.*

Appellants contend that sec. 38.155, Stats., violates the fifth and fourteenth amendments to the United States Constitution and art. I, sec. 1 of the Wisconsin Constitution in that the statute provides for appointive district boards to operate vocational schools and levy taxes for their operation.

Appellants begin their argument with the conclusion that this court, in *State ex rel. Harley v. Lindemann,*[45] "indicated that the privilege of electing members of school boards was a basic right and could not be impaired." This is an obvious misreading of the case. *Harley* dealt with a statute which permitted circuit judges for Milwaukee county to appoint members of the

[44] *Id.* at page 580.
[45] (1907), 132 Wis. 47, 111 N. W. 214.

Milwaukee school board. As quoted by appellants, this court stated:

". . . In plain disregard of that constitutional provision and the decisions of this court construing the same, the act in question not only undertook to take from the electors of the city *the right to elect the members of their school board of education*, but also to take from the authorities of the city the right to appoint the members of such board." (Emphasis added by appellants.) [46]

What appellants fail to point out about *Harley* is that this court there held the statute contrary to art. XIII, sec. 9 of the Wisconsin Constitution, not art. I, sec. 1. That section provides:

**"Election or appointment of statutory officers.** SECTION 9. All county officers whose election or appointment is not provided for by this constitution shall be elected by the electors of the respective counties, or appointed by the boards of supervisors, or other county authorities, as the legislature shall direct. All city, town and village officers whose election or appointment is not provided for by this constitution shall be elected by the electors of such cities, towns and villages, or of some division thereof, or appointed by such authorities thereof as the legislature shall designate for that purpose. All other officers whose election or appointment is not provided for by this constitution, and all officers whose offices may hereafter be created by law, shall be elected by the people or appointed, as the legislature may direct."

This court in *Harley* held that the members of the Milwaukee city school board were city officers who, pursuant to art. XIII, sec. 9, should have been elected or appointed by city authorities. *Thus, this court held merely that circuit judges were not city authorities and hence could not appoint the city school board members.*

Appellants do not mention art. XIII, sec. 9 in this portion of their brief, but it is clearly controlling. The legislature obviously attempted to comply with this pro-

---

[46] *Id.* at pages 52, 53.

vision of the Wisconsin Constitution, both in its letter and its spirit, when enacting sec. 38.155 (5) (c), Stats. That paragraph provides in part:

"(c) The board members shall be appointed by the chairmen or other executive officers of the governing bodies of the units of government included in the district . . . ."

The paragraph goes on to provide for the executive officers to make the appointments in every eventuality: *e.g.*, if governmental units are counties, then the county board chairmen; if municipalities, then the chairmen or executive officers of the school districts, etc. The legislature even provided for the eventuality of a combination of governmental units being involved. Hence the legislature has provided for *elected* representatives of the governmental units within the districts to make the appointments to the district boards, which is clearly in keeping with the spirit of art. XIII, sec. 9.

In addition, the last sentence of art. XIII, sec. 9, provides:

"All other officers whose election or appointment is not provided for by this constitution, and *all officers whose offices may hereafter be created by law,* shall be elected by the people *or appointed, as the legislature may direct.*" (Emphasis added.)

Clearly the members of the district vocational education boards, as created by the state board, may be appointed consistently with this provision of the state constitution.

Appellants make reference to the recent one man-one vote decisions of this court [47] and the United States Supreme Court.[48] These are definitely not in point since they dealt with discrimination in the distribution of vot-

[47] *State ex rel. Sonneborn v. Sylvester* (1965), 26 Wis. 2d 43, 132 N. W. 2d 249.
[48] *E.g., Reynolds v. Sims* (1964), 377 U. S. 533, 84 Sup. Ct. 1362, 12 L. Ed. 2d 506; *Baker v. Carr* (1962), 369 U. S. 186, 82 Sup. Ct. 691, 7 L. Ed. 2d 663.

ing rights, not with the issue of whether a legislature may appoint school boards of the type here involved. While in the recent 1970 case of *Hadley v. Junior College Dist.*[49] the United States Supreme Court dealt with the election of members of a junior college district board, it was *not* concerned with the issue raised by appellants here. In *Hadley,* eight school districts were consolidated to form one junior college district. The Kansas City school district contained 60 percent of the entire population of the consolidated district and was permitted to elect three of the six trustees on the junior college board. The supreme court held this a violation of the one man-one vote principle in that the Kansas City citizens should have been given 60 percent of the representation on the board.

Another recent (1967) case of the United States Supreme Court, *Sailors v. Board of Education,*[50] is nearly identical to the instant case. In *Sailors,* electors of Kent county, Michigan, brought suit in federal district court to enjoin certain action in altering the composition of existing school districts. The action was challenged as unconstitutional since the county board, empowered to make the decision as to school district boundaries, was not elected but was appointed by delegates from the local school boards (who were elected). The electors challenged this system (1) under the due-process clause of the fourteenth amendment, and (2) under the one man-one vote decisions. A three-judge court was convened and subsequently upheld the system as constitutional.

On appeal the supreme court affirmed, stating:

"We find no constitutional reason why state or local officers of the nonlegislative character involved here may not be chosen by the governor, by the legislature, or by

[49] (1970), 397 U. S. 50, 90 Sup. Ct. 791, 25 L. Ed. 2d 45.
[50] (1967), 387 U. S. 105, 87 Sup. Ct. 1549, 18 L. Ed. 2d 650.

some other appointive means rather than by an election." [51]

The court then stated, significantly:

"The Michigan system for selecting members of the county school board is basically appointive rather than elective. We need not decide at the present time whether a state may constitute a local legislative body through the appointive rather than the elective process. . . . We do not have that question here, as the County Board of Education performs essentially administrative functions; and while they are important, they are not legislative in the classical sense." [52]

Appellants would distinguish *Sailors* on the ground that the Wisconsin vocational district boards do perform legislative functions. As noted, *supra*, the boards do not perform legislative functions merely because they levy taxes, etc., as has been stated by this court in the various cases cited and discussed earlier.

In addition, it appears clear that the levying of taxes was not considered a "legislative [function] in the classical sense" by the United States Supreme Court. In *Sailors*, when the court stated "the County Board of Education performs essentially administrative functions;" it added a footnote (which appellants apparently ignored) describing the various powers of the county boards under the Michigan statutes:

"The authority of the county board includes the appointment of a county school superintendent . . . , *preparation of an annual budget and levy of taxes* . . . .

One of the board's most sensitive functions, and the one giving rise to this litigation, is the power to transfer areas from one school district to another." (Emphasis added.) [53]

[51] *Id.* at page 108.
[52] *Id.* at pages 109, 110.
[53] *Id.* at page 110, note 7.

Hence the court viewed powers of the Michigan county school boards, powers nearly identical to those of the Wisconsin vocational district boards challenged here, as *administrative* in nature, and constitutional.

The holding of *Sailors* was affirmed in *Kramer v. Union School Dist.*[54] and in *Hadley.*[55]

As for appellants' argument that the levying of taxes by appointive boards constitutes taxation without representation and is, therefore, violative of the fifth and fourteenth amendments of the United States Constitution and art. I, sec. 1 of the Wisconsin Constitution—it has no basis in fact or in law.

The United States Supreme Court, as we have noted *supra*, upheld the taxing authority of appointed county school boards against a due-process challenge in *Sailors*. In addition, challenges by residents of the District of Columbia against the imposition of taxes by congressional representatives on the ground that the residents of the District had no voice in the election of these representatives, have been rejected by the United States Supreme Court in two decisions, one rendered over a century after the other.

In the 1820 case of *Loughborough v. Blake,*[56] Mr. Chief Justice MARSHALL stated:

". . . [I]t is contended, that they must be limited by that great principle which was asserted in our revolution, that representation is inseparable from taxation.

". . . Although in theory it might be more congenial to the spirit of our institutions to admit a representative from the district, it may be doubted whether, in fact, its interests would be rendered thereby the more secure; *and certainly the constitution does not consider their*

---

[54] (1969), 395 U. S. 621, 629, 89 Sup. Ct. 1886, 23 L. Ed. 2d 583.

[55] *Supra*, footnote 49, at page 59.

[56] (1820), 18 U. S. (5 Wheat.) 317, 5 L. Ed. 98.

*want of a representative in Congress as exempting it from equal taxation.''* (Emphasis added.) [57]

In 1922 the supreme court was again faced with a challenge to taxes imposed on the District of Columbia by Congress. In rejecting the contentions of the District taxpayers, Mr. Justice BRANDEIS, speaking for a unanimous court, stated simply:

". . . It is sufficient to say that the objection is not sound. *There is no constitutional provision which so limits the power of Congress that taxes can be imposed only upon those who have political representation.''* [58] (Emphasis added.)

Although there are no identical statements in decisions of this court, the sewerage commission cases, *supra,* clearly imply that appellants' due-process argument has no merit. In addition, a paragraph from respondent's brief is particularly demonstrative of the absurdity of appellants' argument in this respect:

"It is obvious that under our present form of government taxation does not depend upon representation. There is no exemption in the income tax for those who are disqualified from voting by reason of age or other causes, or for corporations which cannot vote at all. The property tax is a classic example of a tax where the tax burden may have no relationship whatsoever to representation. In many communities a great portion of the property tax is paid by corporations, nonresidents and others who have no voting rights and no representation in the legislative body which levies the taxes."

5. *Art. XIII, sec. 9, and art. X, sec. 3, Wisconsin Constitution.*

Art. XIII, sec. 9, Wisconsin Constitution, provides in its entirety:

---

[57] *Id.* at pages 324, 325.

[58] *Heald v. District of Columbia* (1922), 259 U. S. 114, 124, 42 Sup. Ct. 434, 66 L. Ed. 852. *See also: Hobson v. Tobriner* (D. C. D. C. 1966), 255 Fed. Supp. 295, 298.

"**Election or appointment of statutory officers.** SECTION 9. All county officers whose election or appointment is not provided for by this constitution shall be elected by the electors of the respective counties, or appointed by the boards of supervisors, or other county authorities, as the legislature shall direct. All city, town and village officers whose election or appointment is not provided for by this constitution shall be elected by the electors of such cities, towns and villages, or of some division thereof, or appointed by such authorities thereof as the legislature shall designate for that purpose. All other officers whose election or appointment is not provided for by this constitution, and all officers whose offices may hereafter be created by law, shall be elected by the people or appointed, as the legislature may direct."

If one chooses to classify the district board members as county or municipal officers, their appointment under sec. 38.155 (5) (c), Stats., is consistent with the express provisions of art. XIII, sec. 9. The legislature designated the county or municipal officers to appoint the members in the event the districts were created on such a basis.

If district board members are viewed as "officers whose offices may hereafter be created by law" then they may be "elected by the people or appointed, as the legislature may direct."

Even if one views this language as merely stating the legislature may direct which such officers may be elected or appointed, then the legislature, by implication may also direct the method of appointment, since art. XIII, sec. 9, does not make any provision for the method. And the legislature in sec. 38.155 (5) (c), Stats., has attempted to comply with the spirit of art. XIII, sec. 9, by providing for the elected officials of the governing units within the districts to make the appointments, although not so required by the express language of the provision.

Appellants also contend that sec. 38.155 (5), Stats., violates the uniformity requirements of art. X, sec. 3, Wisconsin Constitution. That section provides:

"**District schools; tuition; sectarian instruction.** SECTION 3. The legislature shall provide by law for the establishment of district schools, which shall be as nearly uniform as practicable; and such schools shall be free and without charge for tuition to all children between the ages of four and twenty years; and no sectarian instruction shall be allowed therein."

Presumably this is because, in appellants' view, the state board may designate the governmental unit whose officers will appoint the district board members. As previously noted, the state board's discretion in this respect is carefully circumscribed. It must designate the appointing body in a manner "consistent with the intent of this subsection." And the subsection carefully details the officers who will make the appointments in every eventuality under the statute.

Further, we do not think that the uniformity requirement of art. X, sec. 3, has the application appellants seek to give it. One decision of this court, interpreting art. X, sec. 3, that has been ignored by appellants, is *State ex rel. Zilisch v. Auer*,[59] which involved a challenge that a statute providing for the annexing or detaching of certain outside territory by adjoining school districts violated the uniformity provision of art. X, sec. 3. In that case this court held:

"Viewing the terms of this constitutional provision in the light of its express terms as well as of the purpose which actuated those who drafted it, we conclude that the requirement as to uniformity applies to the districts after they are formed,—to the character of the instruction given,—*rather than to the means by which they are established and their boundaries fixed.*" (Emphasis added.) [60]

[59] (1928), 197 Wis. 284, 221 N. W. 860, 223 N. W. 123.
[60] *Id.* at page 290.

Accordingly we see nothing in sec. 38.155, Stats., that runs counter to art. X, sec. 3, as interpreted by this court.

### 6. *Statutory objections.*

Appellants contend that even if sec. 38.155, Stats., survives their constitutional attack, the ultimate expansion of District 9 to include the plaintiff municipalities without at that time reconstituting the district board was in violation of the legislative intent as expressed in sec. 38.155 (5) (c).

As we have noted previously, District 9 came into existence on July 1, 1969, after the school boards of the city of Milwaukee, the city of Cudahy, and Joint School District No. 1 of West Allis-West Milwaukee made application to be included in a vocational district. When District 9 was created, the presidents of the participating school boards appointed the six-member board pursuant to sec. 38.155 (5) (c), Stats.

Thereafter, on July 1, 1970, appellants were included within District 9 as a result of the state board action pursuant to sec. 38.155 (1), Stats. The district board was not reconstituted, however, and appellants contend this is contrary to the legislative intent as expressed in sec. 38.155 (5) (c). Presumably appellants contend that the failure to reconstitute the board to reflect representation of the included districts on the district boards violates the legislative intention as stated in par. (c), "to make board representation proportionate to the total population" within the district. Appellants note that respondent's demurrer admits the allegation in the complaint that this procedure was not followed. However, appellants also state:

". . . The state board did not consider this expanded district to be a new district, and accordingly, took no action directing that the board of District 9 be reconstituted . . . ."

The issue as presented, then, is whether the inclusion of appellants and others within District 9 on July 1, 1970, was merely an expansion of the district or was in fact the creation of a new district.

The statute provides for the inclusion of all areas of the state in a vocational district by July 1, 1970. It further provides that any of three governmental units may elect singly, or in combination, to be constituted a district, and, "if the board and the coordinating council for higher education approve, the district *shall be created.*" (Emphasis added.)[61] The statute, then, contemplates *creation* of a vocational district at any time, and *inclusion* of all areas within a district by July 1, 1970. Hence, when application was made by the school boards of the city of Milwaukee, the city of Cudahy, and Joint School District No. 1 of West Allis-West Milwaukee, and was approved by the state board and the coordinating council, the order *creating* the district *created* the district. Although appellants prefer to call it "interim District 9" the statute contemplated that such action as that taken on July 1, 1969, by the state board would be the *creation* of a district.

Therefore, the requirements of par. (c) were met when the district board was appointed by the representatives of the school boards making application to be constituted a district.

". . . *When the board creates districts* the board shall designate which governing bodies shall participate in the selection of the board members. . . ." (Emphasis added.)

This was done in this case. The appellants were *included* within the district as directed by the legislature. This did not constitute the *creation* of a district; District 9 was *created* on July 1, 1969.

Presumably, as the terms of the various members of the District 9 board expire, the representatives of the various added governmental units will then share in the appointment process.

---

[61] Sec. 38.155 (1), Stats.

There is little substance to any of appellants' constitutional challenges to sec. 38.155, Stats. There is likewise no basis for their claim of failure to comply with the requirements of that statute. Appellants' real objection is to a legislative policy determination to provide and finance vocational education on an area basis, and to delegate the creation of districts to the state boards of vocational education and the operation of the various district schools to appointed district boards. The wisdom of such a determination is a matter of legislative choice, it is not for this court to decide.

*By the Court.*—Order affirmed.