James **EGAN**, as an individual and on behalf of all others similarly situated, Plaintiffs,

v.

**WISCONSIN STATE BOARD OF VOCATIONAL, TECHNICAL AND ADULT EDUCATION, et al., Defendants.**

Civ. A. No. 70–C–430.

United States District Court, E. D. Wisconsin.

Oct. 13, 1971.

Michael J. Spector, Milwaukee, Wis., for plaintiffs.

John William Calhoun, Asst. Atty. Gen., Madison, Wis., for Wisconsin State Board of Vocational, Technical and Adult Education and State Board Additional Defendants.

James Urdan, Milwaukee, Wis., for Area 9 Board of Vocational, Technical and Adult Education and District 9 Additional Individual Defendants.

## OPINION AND ORDER

Before DUFFY, Senior Circuit Judge, REYNOLDS, Chief District Judge, and TEHAN, Senior District Judge.

REYNOLDS, Chief District Judge.

This is an action to enjoin § 38.155 of the Wisconsin Statutes establishing and empowering vocational, technical, and adult education districts within Wisconsin. In addition, a declaratory judgment of unconstitutionality is sought. A cause of action is alleged under Title 42 U.S.C. § 1983, and jurisdiction of this court is established under Title 28 U.S. C. §§ 1343 and 2201. Pursuant to Title 28 U.S.C. §§ 2281 and 2284, a three-judge district court has been convened. The facts of this case have been stipulated and issues of law briefed and argued before us. We are agreed that judgment should be granted to the defendants.

The named plaintiff is resident elector and property owner of Ozaukee County, Wisconsin. He is representative of a class composed of residents of that part of the four Wisconsin counties contained

in the Area 9 Board of Vocational, Technical and Adult Education (hereinafter "Area 9 Board"). The Area 9 Board, the Wisconsin State Board of Vocational, Technical and Adult Education (hereinafter "State Board"), and the individual members of those two boards constitute the defendants.

Section 38.155 of the Wisconsin Statutes, the subject of this lawsuit, provided and provides as follows: Between 1965 and 1970 a state master plan of vocational districts was to be prepared. Prior to July 1, 1970, any county, municipality, or school district operating a high school could apply to the State Board to form or become part of an area vocational, technical, and adult education district. By July 1, 1970, all areas of the state were to be included in some vocational school districts. If any areas failed to join a district, the State Board was to order such areas into a district. In other words, the State Board was to draw up a master plan of vocational districts and then implement it, first through so-called voluntary application and then by mandate.

The statute at issue further empowers each area vocational board to levy a property tax of no more than two mills in order to finance operations and improvements. The area boards may also issue bonds and notes and levy a tax to pay both the principal and interest. The tax levied to cover bond obligation is not to be considered for purposes of the two mill limit on general taxing power. In addition to these fiscal powers, each area board is granted broad administrative discretion.

Finally, the statute directs that each area board shall consist of seven members. Six of the seven are to be appointed by either (depending on the circumstances) the various chairmen of the county boards or chairmen of the school districts or the municipal executives comprising the vocational district. Insofar as possible in electing the six board members, representation is to be proportionate to the population of the various units which make up the district. The six board members appointed shall in turn select a seventh member. It is further provided that upon setting up the initial board, two members each shall be appointed for two-year, four-year, and six-year terms. Thereafter terms shall be for six years.

Area 9 was created on July 1, 1969, upon the applications from various local government units in Milwaukee County. In 1970 various public school districts from Ozaukee County petitioned for inclusion in Area 9. These districts were apparently part of vocational Area 11 at the time, and Area 11 opposed the transfer. Approval, however, for the transfer was granted, and on July 1, 1970, the petitioning districts from Ozaukee County, along with various districts of Milwaukee County previously not part of any vocational area, became part of Area 9.

When Area 9 was initially created, board members were appointed pursuant to § 38.155 for terms to end in 1971, 1973, and 1975. Three of these appointed members resided in the City of Milwaukee, two resided in other parts of Milwaukee County, and one resided in Ozaukee County. When the various Ozaukee and Milwaukee County districts were added to Area 9 on July 1, 1970, no changes or additions were made with regard to the Area 9 Board membership. On June 16, 1971, the various presidents of the public school districts comprising Area 9 met to elect two members to the Area 9 Board in anticipation of the expiration of the terms of office of two of the Area 9 Board. At the election meeting the participants were informed by a representative of the State Board that:

"A. Upon the creation of Area 9 in 1969, the Presidents of the School Districts comprising the original District allocated Board seats by population * * *. This allocation took account of the fact that the District would be expanded to include all high school districts in Milwaukee County and most high school districts in Ozaukee County.

"B. The present allocation of the Board * * * is (a) three seats to the City of Milwaukee, (b) two seats to those areas of Milwaukee County not included within the City of Milwaukee and (c) one seat to those areas of Ozaukee County included within Area 9.

"C. As the two Board members whose terms of office end on June 30, 1971, both reside in the City of Milwaukee, the persons to be appointed to such seats must also reside within the City of Milwaukee." (Order entered June 25, 1971.)

Apparently after some dispute, two individuals residing within the City of Milwaukee were nominated and by divided vote elected to the Area 9 Board.

On June 30, 1970, various municipalities within Area 9 commenced an action in the Wisconsin Circuit Court of Milwaukee County challenging § 38.155 and naming Area 9 as a defendant. On July 30, 1970, the instant action was commenced in this court. On October 1 and December 28, 1970, when it was discovered that the municipalities were not proper parties in the state action, individual parties (not including the named plaintiff in this case) intervened in the state court suit on behalf of themselves and all other taxpayers and property owners similarly situated. On January 6, 1971, the state circuit court sustained a demurrer to the complaint, and the plaintiffs in the state action appealed. On June 2, 1971, the Wisconsin Supreme Court affirmed the demurrer holding (1) that the municipalities which originally commenced the action on June 30, 1970, were not proper parties but the individuals which intervened on October 1 and December 28, 1970, were; (2) that Area 9 was within the scope of § 38.155 and § 38.155 was in accordance with the Wisconsin Constitution; and (3) that § 38.155 was in keeping with the Constitution of the United States. West Milwaukee v. Area Board, 51 Wis.2d 356, 187 N.W.2d 387 (1971). On June 25, 1971, oral arguments were made before this court.

## RES JUDICATA

The defendants in the instant action initially argued that this court abstain until the Supreme Court of Wisconsin passed upon § 38.155. Plaintiff in his reply brief states that "In good faith, and consistent with the principle of abstention as recently interpretted [sic] by the Supreme Court, he [the plaintiff] voluntarily agreed to delay oral argument to this panel until after the Wisconsin Supreme Court had decided the *West Milwaukee* case." In any case the decision of the Wisconsin Supreme Court having come down, the defendants now interpose a defense of res judicata, alleging that under Wisconsin law the plaintiff herein is bound as part of the class represented by the named plaintiffs in the Wisconsin suit.

In England v. Louisiana State Bd. of Medical Examiners, 375 U.S. 411, 415, 84 S.Ct. 461, 464, 11 L.Ed.2d 440 (1964), the Supreme Court found that:

"There are fundamental objections to any conclusion that a litigant who has properly invoked the jurisdiction of a Federal District Court to consider federal constitutional claims can be compelled, without his consent and through no fault of his own, to accept instead a state court's determination of those claims. * * *"

In that case the Supreme Court recognized that the post Civil War civil rights statutes enunciating a congressional policy that the national citizenry have a right to seek the aid of the federal judiciary in asserting their civil rights overcomes at least to some extent the policy of giving res judicata effect to state judgments in federal courts. Plaintiff's present plight is virtually identical in substance with the precise holding of *England* that a plaintiff who first applies to a federal court but is then compelled to litigate his claim in the state courts can by "reserving" his federal claims in the state court proceedings avoid any res judicata bars upon his return to the federal domain. But in any case it is implicit in *England* that that

holding is to be enforced equitably. In *England* the court denied application of defendant's plea of res judicata despite the fact that the plaintiff had not "reserved" his federal claims in the state court litigation. In Sweet Briar Institute v. Button, 387 U.S. 423, 87 S.Ct. 1710, 18 L.Ed.2d 865 (1967), the Supreme Court on the basis of *England* reversed a lower court application of res judicata when "The State court decision, in effect upholding the racial restriction, was announced almost a year before the Federal suit was filed." D.C., 280 F. Supp. 312, 314.

■ In the case at bar the plaintiff commenced his civil rights suit in this court prior to the intervention of the individual plaintiffs in the state court suit. There is nothing in the record before us which would indicate that he participated in the state court litigation or that he wished to; rather everything points to the conclusion that plaintiff sought solely to achieve a federal determination of his federal cause of action based on the federal constitution. It seems to us that serious harm to both the efficacy of state statutes and to the Constitution would result if we were to take a position that would say in effect that a state may enforce an unconstitutional statute simply because another person's lawsuit was disposed of at an earlier time. Such a determination "is not 'at the mercy' of the parties * * * nor dependent on the usual [res judicata] rules governing the settlement of private litigation. 'Courts of equity may, and frequently do, go much farther both to give and withhold relief in furtherance of the public interest than they are accustomed to go when only private interests are involved.'" Mercoid Corporation v. Mid-Continent Investment Co., 320 U.S. 661, 670, 64 S. Ct. 268, 273, 88 L.Ed. 376 (1944).

## CONSTITUTIONALITY

The "one man—one vote" principle, perhaps the most frequently litigated question in "election" cases, is not presented in this suit. Rather, plaintiff herein argues that § 38.155 is unconstitutional on its face because it does not require direct election of the area boards and, alternatively, that it is unconstitutional as applied because when the July 1, 1970, expansion of Area 9 was made, the Area 9 Board membership was not reconstituted.

In the past decade the Supreme Court has dealt with the question of whether indirect election or appointment is permissible under the constitution as a means to select public officers. Gray v. Sanders, 372 U.S. 368, 83 S.Ct. 801, 9 L.Ed.2d 821 (1963); Sailors v. Board of Education, 387 U.S. 105, 87 S.Ct. 1549, 18 L.Ed.2d 650 (1967); Fortson v. Morris, 385 U.S. 231 (1966). We believe that *Sailors* controls the instant case. In *Sailors* the constitutionality of Michigan County school boards was challenged:

" * * * The alleged constitutional questions arise when it comes to the county school board. It is chosen, not by the electors of the county, but by delegates from the [popularly elected] local boards. Each board sends a delegate to a biennial meeting and those delegates elect a county board of five members, who need not be members of the local boards, from candidates nominated by school electors. * * * " 387 U.S. at 106–107, 87 S. Ct. at 1551.

The Supreme Court found the county boards to be within the parameters of the constitution:

"The Michigan system for selecting members of the county school board is basically appointive rather than elective. We need not decide at the present time whether a State may constitute a local legislative body through the appointive rather than the elective process. * * * We do not have that question here, as the County Board of Education performs essentially administrative functions; and while they are important, they are not legislative in the classical sense.

"Viable local governments may need many innovations, numerous combinations of old and new devices, great flexibility in municipal arrangements to meet changing urban conditions. We see nothing in the Constitution to prevent experimentation. At least as respects nonlegislative officers, a State can appoint local officials or elect them or combine the elective and appointive systems as was done here. * * *" 387 U.S. at 109–111, 87 S. Ct. at 1553.

Plaintiff seeks to distinguish *Sailors* asserting that § 38.155 creates "legislative" as opposed to "administrative" bodies. The court in *Sailors* describes the powers of the Michigan County school boards:

"The authority of the county board includes the appointment of a county school superintendent * * * preparation of an annual budget *and levy of taxes* * * * distribution of delinquent taxes * * * furnishing consulting or supervisory services to a constituent school district upon request * * * conducting cooperative educational programs on behalf of constituent school districts which request such services * * * and with other intermediate school districts * * * employment of teachers for special educational programs * * * and establishing, at the direction of the Board of Supervisors, a school for children in the juvenile homes * * *. One of the board's most sensitive functions, and the one giving rise to this litigation, is the power to transfer areas from one school district to another. * * *" 387 U.S. at 110 n. 7, 87 S.Ct. at 1553. (Emphasis added.)

■ While the powers granted area boards by § 38.155 are not completely identical to those outlined in *Sailors* (e. g., an area board under § 38.155 does not have the power to change a school district), they are substantially so similar that we feel there is no room to argue, at least for "election" purposes, that Area 9 is a "legislative" body.

Plaintiff places some reliance on Hadley v. Junior College District, 397 U.S. 50, 90 S.Ct. 791, 25 L.Ed.2d 45 (1970). However, as we read *Hadley*, it merely sets down the constitutional limits which apply when a state chooses to use a direct elective process. In a sense the difference between *Hadley* and *Sailors* is similar to the precept that while a state cannot deny equal protection simply because its act is a "privilege" and not a "right," it does not necessarily follow that due process would deny the state the power not to act at all. See People ex rel. Younger v. El Dorado Cty., 96 Cal.Rptr. 553, 487 P.2d 1193 (Cal.Sup. 1971). That *Sailors* remains viable constitutional law is clearly apparent in the Supreme Court's recent reliance on that case for the principle that "local governments may need considerable flexibility in municipal arrangements if they are to meet changing societal needs." Abate v. Mundt, 403 U.S. 182, 185, 91 S.Ct. 1904, 1907, 29 L.Ed.2d 399 (1971).

■ Plaintiff next challenges the constitutionality of not dissolving the Area 9 Board on July 1, 1970, so as to allow a *de novo* election of the membership. We find no merit in this position. The Ozaukee County school districts transferred to Area 9 from Area 11 were so transferred at their own request. The Milwaukee County school districts added to Area 9 on July 1, 1970, knew before Area 9 was originally constituted that this would happen no later than July 1, 1970. There is no intimation in the record before us that any of the "new" school districts added to Area 9 in 1970 could not have joined with the "original" localities in 1969 in initially constituting Area 9, nor is there any intimation on the record that the "original" Area 9 localities attempted to take advantage over the newer additions. Indeed the record shows, if anything, just the opposite. The 1970 additions to Area 9 by their own choice were late comers. We do not think that any constitutional rights were impaired

when the Area 9 and State Boards decided in accord with § 38.155 to absorb the Ozaukee and Milwaukee County additions into an on-going program rather than to dissolve and begin anew.

This decision constitutes our findings of fact and conclusions of law in accordance with Rule 52(a) of the Federal Rules of Civil Procedure.

Upon the foregoing findings of fact and conclusions of law,

It is ordered that the clerk of court enter judgment in favor of the defendants and against the plaintiffs dismissing the action.