DR. BARBARA THOMPSON, State Superintendent Department of PublicInstruction
You have asked me to answer three questions bearing on the teaching of health occupation courses in the secondary public schools as well as the vocational, technical and adult education system.
Your first question is: "May a school district contract with a vocational, technical and adult education district, under Section 66.30, for a health occupations course, to be taught in the public high school?"
The answer to this question is yes. Section 66.30 provides, in part:
 (1) In this section "municipality" means . . . any city, village, town, county, school district . . . .
 (2) In addition to the provisions of any other statutes specifically authorizing cooperation between municipalities, unless *Page 149 
such statutes specifically exclude action under this section, any municipality may contract with other municipalities, for the receipt or furnishing of services or the joint exercise of any power or duty required or authorized by law.
It is my opinion that the term "any . . . school district" in the context of sec. 66.30, Stats., clearly includes vocational, technical and adult education school districts. The Legislature initially provided for local vocational school boards in ch. 616, Laws of 1911. Moreover, the Wisconsin Supreme Court has consistently referred to elementary and secondary school law in interpreting the statutes implementing the vocational school system. See, e.g., West Milwaukee v. Area Board of Vocational,Technical and Adult Education, 51 Wis.2d 356, 187 N.W.2d 387
(1971), and Wood County v. Board of Vocational, Technical andAdult Education, 60 Wis.2d 606, 211 N.W.2d 617 (1973). Finally, the specific enumeration of "municipalities" in see. 66.30, Stats., includes both municipalities and such quasi-municipal corporations as school districts. Because school districts have been determined to be municipalities for the purposes of see. 66.30 agreements, 66 Op. Att'y Gen. 272, 274 (1977), vocational, technical and adult education districts should also be capable of entering into such agreements because they too are quasi-municipal corporations. See 63 Op. Att'y Gen. 187, 191 (1974).
In your second question you ask, "would such a health occupations teacher be required to hold a license to teach issued by the Department of Public Instruction?"
It is my opinion that such a teacher must hold a license to teach issued pursuant to sec. 115.28 (7), Stats. This subsection provides, in part, that the Superintendent is to: "License or certify all teachers for the public schools of the state, make rules and prescribe standards of attainment for the examination, licensing and certification of teachers within the limits prescribed in ss. 118.19 (2) and (3) . . . ." Sec. 115.28 (7)(a), Stats.
Section 118.19 (1), Stats., clearly addresses your question: "Any person seeking to teach in a public school or in a school or institution operated by a county or the state shall first procure a certificate or license from the department." *Page 150 
The "seeking to teach" language of sec. 118.19 (1), Stats., does not restrict an individual without a license who because of his expertise in a given area is invited by a teacher to lecture before a class, e.g., the local police chief discussing the role of the police in the community. In contrast, your question envisions not a guest lecturer but rather an individual holding a position to teach an entire course.
On this point see. 121.02 (1)(a), Stats., dealing with school district standards, provides: "Every teacher, supervisor, administrator and professional staff member shall hold a certificate, license or permit to teach issued by the department before entering on duties for such position." Moreover, sec.121.17 (2)(b), Stats., provides in part that the State Superintendent may withhold state aids if a state school district does not employ teachers qualified under sec. 118.19, Stats.
In arriving at this conclusion, I am mindful of that part of sec. 66.30 (2), Stats., which provides: "If municipal parties to a contract have varying powers or duties under the law, each may act under the contract to the extent of its lawful powers and duties. This section shall be interpreted liberally in favor of cooperative action between municipalities." In my opinion, this part of sec. 66.30 (2), Stats., was not intended to permit a variance in the licensing requirements to be applied to those persons who would perform under a sec. 66.30, Stats., agreement.
Your last question is:
 If a school district entered into a contract with a VTAE district under Section 118.15 (1) (c) and (2) for high school students to attend a VTAE school for the purpose of taking a health occupations course, would a teacher of such course need to hold a license issued by the Department of Public Instruction?
The answer to your question is yes. Having determined that a license is needed for a VTAE teacher to teach in high school, I am of the opinion that the underlying policy consideration dictates the same result regardless of which building the instruction is to take place in. To determine otherwise would allow a subversion of the policy of assuring that high school students should only be taught by teachers deemed qualified. This check on teacher quality is controlled by *Page 151 
licensing procedures established by the Legislature and the Department.
Nothing in this opinion should be construed as restricting the power of the Superintendent to determine, through agency rule or otherwise, that VTAE teachers of health occupations courses are qualified to teach such a course to high school students provided that the determination is not in conflict with any statute.
BCL:CDH