18 U.S. 146 (____)
5 Wheat. 146
LOUGHBOROUGH
v.
BLAKE.
Supreme Court of United States.

Argued by Jones, for the plaintiff, and by the Attorney-General, for the defendant.
March 10th. MARSHALL, Ch. J., delivered the opinion of the court.
This case presents to the consideration of the court a single question; it is *318] this: *Has congress a right to impose a direct tax on the district of Columbia?
The counsel who maintains the negative has contended, that congress must be considered in two distinct characters. In one character, as legislating for the states; in the other, as a local legislature for the district. In the latter character, it is admitted, the power of levying direct taxes may be exercised; but it is contended, for district purposes only, in like manner as the legislature of a state may tax the people of a state for state purposes.
Without inquiring, at present into the soundness of this distinction, its possible influence on the application, in this district, of the first article of the constitution, and of several of the amendments, may not be altogether unworthy of consideration. It will readily suggest itself to the gentlemen who press this argument, that those articles which, in general terms, restrain the power of congress, may be applied to the laws enacted by that body, for the district, if it be considered as governing the district in its character as the national legislature, with less difficulty, than if it be considered a mere local legislature. But we deem it unnecessary to pursue this investigation, because we think the right of congress to tax the district does not depend solely on the grant of exclusive legislation.
The 8th section of the 1st article gives to congress the "power to lay and collect taxes, duties, imposts and excises," for the purposes thereinafter mentioned. This grant is general, without limitation as to place. It, consequently, *319] extends to all *places over which the government extends. If this could be doubted, the doubt is removed by the subsequent words which modify the grant. These words are, "but all duties, imposts and excises shall be uniform throughout the United States." It will not be contended, that the modification of the power extends to places to which the power itself does not extend. The power, then, to lay and collect duties, imposts and excises may be exercised, and must be exercised, throughout the United States. Does this term designate the whole, or any particular portion of the American empire? Certainly, this question can admit of but one answer. It is the name given to our great republic, which is composed of states and territories. The district of Columbia, or the territory *147 west of the Missouri, is not less within the United States, than Maryland or Pennsylvania; and it is not less necessary, on the principles of our constitution, that uniformity in the imposition of imposts, duties and excises should be observed in the one, than in the other. Since, then, the power to lay and collect taxes, which includes direct taxes, is obviously co-extensive with the power to lay and collect duties, imposts and excises, and since the latter extends throughout the United States, it follows, that the power to impose direct taxes also extends throughout the United States.
The extent of the grant being ascertained, how far is it abridged by any part of the constitution? The 20th section of the first article declares, that "representatives and direct taxes shall be apportioned among the several states which may be included *within this Union, according to their [*320 respective numbers." The object of this regulation is, we think, to furnish a standard by which taxes are to be apportioned, not to exempt from their operation any part of our country. Had the intention been, to exempt from taxation, those who were not represented in congress, that intention would have been expressed in direct terms. The power having been expressly granted, the exception would have been expressly made. But a limitation can scarcely be said to be insinuated. The words used, do not mean, that direct taxes shall be imposed on states only which are represented, or shall be apportioned to representatives; but that direct taxation, in its appication to states, shall be apportioned to numbers. Representation is not made the foundation of taxation. If, under the enumeration of a representative for every 30,000 souls, one state had been found to contain 59,000, and another 60,000, the first would have been entitled to only one representative, and the last to two. Their taxes, however, would not have been as one to two, but as fifty-nine to sixty. This clause was obviously not intended to create any exemption from taxation, or to make taxation dependent on representation, but to furnish a standard for the apportionment of each on the states.
The 4th paragraph of the 9th section of the same article will next be considered. It is in these words: "No capitation, or other direct tax, shall be laid, unless in proportion to the census or enumeration herein before directed to be taken." *The census referred to is in that clause of [*321 the constitution which has just been considered, which makes numbers the standard by which both representatives and direct taxes shall be apportioned among the states. The actual enumeration is to be made "within three years after the first meeting of the congress of the United States, and within every subsequent term of ten years, in such manner as they shall by law direct." As the direct and declared object of this census is, to furnish a standard by which "representatives, and direct taxes, may be apportioned among the several states which may be included within this Union," it will be admitted, that the omission to extend it to the district or the territories, would not render it defective. The census referred to is admitted to be a census exhibiting the numbers of the respective states. It cannot, however, be admitted, that the argument which limits the application of the power of direct taxation to the population contained in this census, is a just one. The language of the clause does not imply this restriction. It is not, that "no capitation or other direct tax shall be laid, unless on those comprehended within the census herein before directed to be taken," but *148 "unless in proportion to" that census. Now, this proportion may be applied to the district or territories. If an enumeration be taken of the population in the district and territories, on the same principles on which the enumeration of the respective states is made, then the information is acquired, by which a direct tax may be imposed on the district and territories, "in proportion *322] to the *census or enumeration" which the constitution directs to be taken. The standard, then, by which direct taxes must be laid, is applicable to this district, and will enable congress to apportion on it, its just and equal share of the burden, with the same accuracy as on the respective states. If the tax be laid in this proportion, it is within the very words of the restriction. It is a tax in proportion to the census or enumeration referred to.
But the argument is presented in another form, in which its refutation is more difficult. It is urged, against this construction, that it would produce the necessity of extending direct taxation to the district and territories, which would not only be inconvenient, but contrary to the understanding and practice of the whole government. If the power of imposing direct taxes be co-extensive with the United States, then, it is contended, that the restrictive clause, if applicable to the district and territories, requires that the tax should be extended to them, since to omit them would be to violate the rule of proportion. We think, a satisfactory answer to this argument may be drawn from a fair comparative view of the different clauses of the constitution which have been recited.
That the general grant of power to lay and collect taxes, is made in terms which comprehend the district and territories as well as the states, is, we think, incontrovertible. The subsequent clauses are intended to regulate the exercise of this power, not to withdraw from it any portion of the community. *323] *The words in which those clauses are expressed, import this intention. In thus regulating its exercise, a rule is given in the second section of the first article, for its application of the respective states. That rule declares how direct taxes upon the states shall be imposed. They shall be apportioned upon the several states, according to their numbers. If, then, a direct tax be laid at all, it must be laid on every state, conformable to the rule provided in the constitution. Congress has clearly no power to exempt any state from its due share of the burden. But this regulation is expressly confined to the states, and creates no necessity for extending the tax to the district or territories. The words of the 9th section do not, in terms, require, that the system of direct taxation, when resorted to, shall be extended to the territories, as the words of the 2d section require that it shall be extended to all the states. They, therefore, may, without violence, be understood to give a rule, when the territories shall be taxed, without imposing the necessity of taxing them. It could scarcely escape the members of the convention, that the expense of executing the law in a territory, might exceed the amount of the tax. But be this as it may, the doubt created by the words of the 9th section, relates to the obligation to apportion a direct tax on the territories as well as the states, rather than to the power to do so.
If, then, the language of the constitution be construed to comprehend the territories and district of Columbia, as well as the states, that language *324] confers on congress the power of taxing the district *and territories as well as the states. If the general language of the constitution *149 should be confined to the states, still, the 16th paragraph of the 8th section gives to congress the power of exercising "exclusive legislation in all cases whatsoever within this district."
On the extent of these terms, according to the common understanding of mankind, there can be no difference of opinion; but it is contended, that they must be limited by that great principle which was asserted in our revolution, that representation is inseparable from taxation. The difference between requiring a continent, with an immense population, to submit to be taxed by a government having no common interest with it, separated from it by a vast ocean, restrained by no principle of apportionment, and associated with it by no common feelings; and permitting the representatives of the American people, under the restrictions of our constitution, to tax a part of the society, which is either in a state of infancy, advancing to manhood, looking forward to complete equality so soon as that state of manhood shall be attained, as is the case with the territories; or which has voluntarily relinquished the right of representation, and has adopted the whole body of congress for its legitimate government, as is the case with the district, is too obvious, not to present itself to the minds of all. Although, in theory, it might be more congenial to the spirit of our institutions, to admit a representative fron the district, it may be doubted, whether, in fact, its interests would be rendered thereby *the more secure; and certainly, the constitution [*325 does not consider their want of a representative in congress as exempting it from equal taxation.
If it were true, that, according to the spirit of our constitution, the power of taxation must be limited by the right of representation, whence is derived the right to lay and collect duties, imposts and excises, within this district? If the principles of liberty, and of our constitution, forbid the raising of revenue from those who are not represented, do not these principles forbid the raising it by duties, imposts and excises, as well as by a direct tax? If the principles of our revolution give a rule applicable to this case, we cannot have forgotten, that neither the stamp act, nor the duty on tea, were direct taxes. Yet, it is admitted, that the constitution not only allows, but enjoins, the government to extend the ordinary revenue system to this district.
If it be said, that the principle of uniformity, established in the constitution, secures the district from oppression in the imposition of indirect taxes, it is not less true, that the principle of apportionment, also established in the constitution, secures the district from any oppressive exercise of the power to lay and collect direct taxes.
After giving this subject its serious attention, the court is unanimously of opinion, that congress possesses, under the constitution, the power to lay and collect direct taxes within the district of Columbia, in proportion to the census directed to be taken by the constitution, and that there is no error in the judgment of the circuit court.
Judgment affirmed.