### The Second Municipality of New Orleans v. Duncan.

The ordinance of the council of the Second Municipality of New Orleans of 29th August, 1846, imposing a special tax on all real estate within the limits of the municipality, for the purpose of paying its debts and providing for the support of the public schools, is legal and constitutional.

Art. 127 of the constitution applies to state, and not to municipal taxes.

In the exercise of the power conferred on the council of the city of New Orleans by the 6th sec. of the stat. of 17 Feb. 1805, and subsequently transferred to the councils of the different municipalities by the stat. of 8 March, 1836, of taxing real and personal estate, the corporation is not bound to tax both species of property at the same time; a tax may be legally imposed on either alone.

APPEAL from the Third District Court of New Orleans, *Kennedy*, J. The defendant appealed from a judgment in this case in the following words : " After evidence and argument, and at the suggestion of the court, a decree is now herein entered, *pro forma*, in favor of the plaintiffs and against the defendant without prejudice." The action was instituted by the municipality to recover the amount of a tax on real estate owned by the defendant. The tax was assessed under an ordinance of 29 August, 1846, imposing a tax on all real estate within the limits of the municipality.

*Lee* and *Durant*, for the plaintiffs, cited stat. 17 Feby. 1805, s. 6. *Oakey* v. *Mayor*, 1 La. 1.

*Duncan*, pro se.

*Schmidt*, on the same side. By the 32d article of the constitution, the power of imposing and collecting taxes belongs *exclusively* to the legislature, the members of which, who are mere temporary agents of the people, cannot delegate this power, because the constitution gives them no such authority. The same inference is the only legitimate deduction which can be drawn from the 127th art. of the constitution, which provides " *that taxation shall be equal and uniform throughout the State;*" because such equality and uniformity are only attainable by confining the exercise of the power to the legislature, whose authority is coextensive with the territorial limits of the State. It follows that the new constitution has virtually abrogated all powers of taxation possessed by every other political body, except the legislature; and hence, whatever may have been the former powers of the plaintiffs in relation to taxation, they have ceased to exist under the present order of things.

The power of imposing taxes is not an attribute usually belonging to municipal corporations, and when the power is bestowed, it is always limited, so as to be exercised for specific and not for general purposes. Such is the rule deducible from the 6th section of the act of the 17th February, 1805, and from the 2d section of the act of 8th March, 1836, which confer only specific powers, to be exercised for the purposes enumerated, and the special tax does not fulfil any of these purposes.

The 1st section of the act of 16th February, 1841, even if in force and constitutional, does not authorize the blending of lawful and unlawful taxation; and the whole ordinance is necessarily void from this inherent defect, and because it is impossible to ascertain what portion of the tax is to be applied to the public schools.

Supposing that the municipality enjoyed the unquestionable right to lay taxes for the purposes mentioned in the preamble of the ordinance, yet it is null and void. All taxation must be fair and equal, " *so that no one class of individuals, and no one species of property, may be unequally or unduly assessed,*" to use the language of Chancellor Kent. 2 Com. 23. If the legislature itself imposed the tax, it must have observed this rule, and it would be preposterous to contend that its creature, the corporation, can, in its exercise of a delegated power, do

more than the principal could have done, had he acted for himself. That it acts unequally, is obvious, since it affects only land and slaves; while horses, carriages, capital, stock in trade of every description, ships, steamboats, money in banks, and the innumerable moveable effects of a large and flourishing commercial community, are entirely exempt from the operation of the tax.

Second
Municipality
v.
Duncan.

Because all taxation must be exercised in the usual and ordinary form, and nothing can justify the imposition of a *special* or *extraordinary tax*, but some overwhelming calamity endangering the social existence of the community.

The judgment of the court was pronounced by

Eustis, C. J.    This is an action for the amount of a tax on real estate owned by the defendant.    It is charged that, by an ordinance of the 29th of August, 1846, a special tax of one per cent was imposed on all real estate within the taxable limits of the municipality, and that the sum of eighty-five dollars is due by the defendant, according to the assessment made on a lot belonging to him, situated within said limits.    There was judgment for the plaintiffs, and the defendant appealed.    The matter in dispute between the parties not exceeding the sum of three hundred dollars, the duty of this court is confined to a consideration of the constitutionality and legality of the tax.    No questions have been raised in argument, except those which relate directly to one or the other of these subjects.

The ordinance is as follows:

"Whereas, by the statement of the acting treasurer of this municipality, it appears that the revenue of said municipality will not be sufficient to meet the demands on the treasury, owing to the maturity of notes and bonds issued by said municipality; and as it is the duty and determination of the council to make all necessary arrangements in their power for the faithful observance of all contracts, and discharge of all debts of said municipality; and, whereas, an expenditure is required for the necessary improvements of said municipality, for the municipal hall, for which an outlay has been made and heavy contracts entered into at the north by the contractor, who relies upon the faithful payment of the instalments by the municipality, as well as for the public schools, which are of paramount importance and utility to the people, and deserving of our warmest support; therefore,

Be it ordained, that by virtue of the authority vested in the mayor and city council by the 6th section of an act to incorporate the city of New Orleans, approved the 17th February, 1805, and by the 2d section of an act approved 8th March, 1836, and the 1st section of an act approved 16th February, 1841, relative to public schools, and other acts of the legislature, a special tax on all real estate situated within the taxable limits of this municipality, of one dollar on every hundred dollars, is hereby imposed on the value of real estate, as ascertained by the assessment of 1846.    Also, a tax of four dollars on each slave in said municipality, as per said assessment of 1846: and the treasurer is hereby authorized and required to collect said taxes immediately after the first day of October."

The objects of the imposition of this tax are within the lawful powers of the municipality and proper subjects of administration.    The tax itself is said to be unconstitutional, it being in conflict with art. 127 of the constitution of 1845. That article, by its very terms, applies to state, and not to municipal taxes.    It provides for the equality and uniformity of taxation *throughout the State*.    As an approximation to either of these objects would be impossible without a general valuation of the property to be taxed, the article provides for the postponement

of its operation until after the year 1848, thus giving time for the legislature to provide the machinery to carry into effect a principle which has hitherto been a standing monument of the impotency of civil government, in applying to the complicated facts of society, abstractions, however true, just and important they may be. As we have had occasion to observe recently, in the case of *Egerton* v. *The Third Municipality*, 1 Ann. Rep. 435, the framers of this constitution had before them the condition of the municipalities of New Orleans, with their debts, their abuses and their wants, and their corporate existence is recognized and continued as to certain public rights, by an express provision. The jurisprudence under which the present system of taxation had grown up, was before them, and the power of remedying the evils of misgovernment was left, in *statu quo*, with the legislature; and the convention confined itself to providing for the state government, leaving the municipal bodies, as it is believed sound policy justified, under legislative control.

It remains next to examine the question of the legality of this tax. It is urged in argument that, by the act of 1805, which is called the charter of the city, the mayor and council are authorized to raise money by taxation on *real and personal estate* only, and that the right of taxation is indivisible, and must be exercised *entirely* on both, and not on one alone, of these objects. In the case of *Oakey* v. *The Mayor et al.*, 1 La. p. 1, *et seq.* decided in 1830, the Supreme Court thus notices this construction, which was maintained by the counsel who argued that case: "The first objection is that, by the charter, the corporation is authorized to tax *real and personal estate*, and that the tax now complained of is on real estate alone. It does not appear to us that the power given to tax real and personal estate, renders it imperative on the corporation to tax both. By the same section of the law, the city council are empowered to exercise their authority as to them may seem proper."

It was also urged by the counsel for the plaintiff in that case that, taxes could only be laid under the act of 1805, to meet a deficiency in the ordinary revenues of the city: but this view was not sustained by the court, which recognized in the corporation a general power to raise money by taxation. From that period the power has been exercised, and, on the division of the city, the councils of the municipalities succeeded to that of the corporation of New Orleans. The act of 1841, referred to in the preamble of the ordinance, authorizes the municipalities to establish schools within their limits, and to *levy taxes for their support*. This construction of the power of the council to lay taxes, has been acted upon ever since that decision was made, not only without any check on the part of the legislature, but with an implied assent, resulting from their legislation on subjects of municipal administration; and, as late as 1844, an act was passed requiring the approval of the mayor, or, in the event of his veto, the votes of three-fourths of the members of the council passing the same, to every municipal ordinance *creating a special tax on real estate*. And this court, in the case of *The Second Municipality* v. *Morgan*, 1 Ann. 111, recognized the power of the municipality to lay a special tax on real estate, for the legitimate purposes of administration. The constitutional provision concerning taxation, is the declaration of a principle which has its foundation in political justice, and is one of the bases of the social compact under our institutions. In recognizing it as such, we are not assisted in our inquiries as to the course we are bound to pursue in the matter under advisement.

We have no means before us by which we can form an idea of the equality of the taxation by this municipality, in its practical results. We are furnished with no evidence of the mode in which the public burthens operate upon the inhabitants. We have a simple admission made in the record, "that there is *no other special ordinance* of the Second Municipality assessing taxes on personal property." We know of no reason imperative on the municipality to impose their taxes in any particular form, or to include any other species of property in an ordinance imposing a tax on real estate. It constitutes no objection, under any view of the subject, to the validity of this tax, that personal property was not also taxed by special ordinance.

To establish the inequality of a tax like this affirmatively something more must be offered than a naked fact like this, which does not aid us in forming a general conclusion. Nor does it follow that, because article 127 of the constitution does not apply to municipal taxes, the right of municipal corporations to lay taxes is arbitrary and without restraint. That right is always limited by the principles on which our institutions are founded, and which the constitution recognises as sacred. The Supreme Court of Kentucky, in the case of the *City of Louisville* v. *M'Quillan's Heirs*, 9 Dana's Reports, 516, in answer to an argument pressed at bar, that the right of the city of Louisville to tax was unlimited, has presented this subject in a very clear light :

"But," say the court, "if the assessment against *M'Quillan's heirs*, should be deemed a tax, we cannot admit that the taxing power is, in this country, altogether arbitrary. Such a doctrine would be no less alarming than anomalous. When shall a tax be levied ? To what amount ? Shall it be a capitation or property tax ? Direct or indirect? *Ad valorem* or specific ? And what classes of property are the fittest subjects of taxation, are all questions wisely confided by our constitution to the legislative department, subject to no other limitation than that of the moral influence of public virtue, and responsibility to public opinion. But, in some other respects, and so far as the power of taxation may be effectual without being thus limited, it is, in our judgment, limited by some of the declared ends and principles of the fundamental law. Among these political ends and principles, *equality*, as far as practicable, and security of property against irresponsible power, are eminently conspicuous in our state constitution. An exact equalization of the burden of taxation, is unattainable and *utopian*. But still there are well defined limits within which the practical equality of the constitution may be preserved, and which, therefore, should be deemed impassable barriers to legislative power. Taxation may not be universal; but it must be general and uniform. Thus, if a capitation tax be laid, none of the class of persons thus taxed can be constitutionally exempt, upon any other ground than that of public service. The legislature, in the plenitude of its taxing power, cannot have constitutional authority to exact from one citizen, or even one county, the entire revenue for the whole commonwealth. Such an exaction, by whatever name the legislature might choose to call it, would not be a tax, but would be undoubtedly the taking of private property for public use, and which could not be done constitutionally, without the consent of the owner or others, or without retribution of the value in money.

" The distinction between constitutional taxation, and the taking of private property for public use by legislative will, may not be definable with perfect precision. But we are clearly of the opinion that, whenever the property of a citizen shall be taken from him by the sovereign will, and appropriated, without

24

his consent, to the benefit of the public, the exaction should not be considered as a tax, unless similar contributions be made by that public itself, or shall be exacted rather, by the same public will, from such constituent members of the same community generally, as own the same kind of property. Taxation and representation go together; and representative responsibility is one of the chief conservative· principles of our form of government. When taxes are levied, therefore, they must be imposed on the public in whose name and for whose benefit they are required, and to whom those who impose them are responsible. And, although there may be a discrimination in the subjects of taxation, still, persons in the same class, and property of the same kind must generally be subjected alike to the same common burden. This alone is taxation, according to our notion of constitutional taxation in Kentucky. And this idea, fortified by the spirit of our constitution, is in our judgment, confirmed by so much of the twelfth section of the tenth article as declares 'nor shall any man's property be taken, or applied to public use, without the consent of his representatives, and without just compensation being previously made to him.'

"The object of this great guaranty was to secure every citizen against spoliation by a dominant faction, or by a rapacious public power, acting in obedience to the will of a constituent body for whose use his property may be taken, and from whom no similar contribution is required. It intended that public responsibility and the power of exaction for public use, should be in some degree commensurable; and, therefore, it should be understood as providing that the public shall not take the property of any citizen for its own use, without his consent or an equivalent in money, or in similar contributions by itself. If this be not its practical effect, it is mere *brutum fulmen,* and may always be evaded by exactions made in the false semblance of taxation."

See also the case of *Sutton's Heirs* v. *City of Louisville,* 5th Dana's Reports, 28.

The extreme difficulty of approaching an equality in the distribution of the burthens of taxation is obvious to the most seperficial observer, nor is its solution rendered more easy by the progress of the science of political economy. The various, complicated and hidden sources of wealth, and the different opinions of economists as to the operation of any one tax or impost, show the obstacles which would attend any judicial enquiry as to the approximation to equality in a system of taxation. Federalist, No. 21. 2 Story, on Const. § 994 *et seq.* Debates in Convention of Louisiana, p. 892 *et seq.* In the case before us, to use the language of Chief Justice Marshall, "we are not driven to the perplexing enquiry, so unfit for the judicial department, what degree of taxation is the legitimate use, and what degree may amount to the abuse of the power." *M'Culloch* v. *State of Maryland,* 4 Wheaton, 430. In conclusion it may not be out of place to state that, as the guardians of the rights and property of citizens, we should fail·in our duty if we were to forbear to exercise our power on any proper occasion to protect them from spoliation; at the same time it must be confined to its constitutional limits, and to those cases in which its authority cannot be questioned, and its action will consequently be· effectual.

As this· court held in the case of *The Second Municipality* v. *Morgan,* 1 Ann. R. 111, in which a citizen was relieved against the enforcement of an illegal municipal exaction, the form of taxation presents no impediment to the action of the judiciary in any violation of common right, and the wrong which it endeavors to cover will be as fully redressed, as in cases of a direct and palpable

unlawful appropriation of private property. That in both cases the citizen has a right to claim judicial protection, and that no judge can withhold it, is equally supported by authority and the sound principles of the social compact.

*M'Culloch* v. *The State of Maryland*, 4 Wheaton, 427. *Bussey* v. *Gilmore*, 3 Greenleaf, 191. *Nance* v. *Howard*, Breese's Rep. 183.; 3 Howard, 133, 151, 212, 720. 3 Dallas, 171. 5 Wheaton, 317. *Second Municipality* v. *Morgan*, 1 Annual Rep. 111. *Apthorp* v. *Portland Bank*, 12 Massachusetts, 262.