580 S.E.2d 137

**Irvin W. CAMPBELL, J.C. Lawyer, Backus Ferguson, and Thomas Hanahan, III, on behalf of themselves and all others similarly situated, Respondents,**

**v.**

**HILTON HEAD NO. 1 PUBLIC SERVICE DISTRICT and Beaufort County South Carolina, Appellants.**

No. 25635.

Supreme Court of South Carolina.

Heard Feb. 20, 2003.

Decided April 28, 2003.

Steve A. Matthews and Benjamin T. Zeigler, of Haynsworth Sinkler Boyd, P.A., of Columbia, Stephen P. Hughes and Mary Bass Lohr, of Howell, Gibson & Hughes, of Beaufort, for Appellants.

A. Camden Lewis, Mary G. Lewis, and Ariail E. King, of Lewis, Babcock & Hawkins, L.L.P., of Columbia; Joel D. Bailey, of The Bailey Law Firm, P.A., of Beaufort, for Respondents.

Justice WALLER:

This is a direct civil appeal. On cross-motions for summary judgment, the trial court granted summary judgment for respondents and also granted respondents' request for class certification. Appellants appeal both decisions. We reverse.

## FACTS[1]

In 1969, the Legislature created appellant Hilton Head No. 1 Public Service District (the District) as a special purpose district to supply water and sewer services to the northern

---

1. The facts in this matter are undisputed.

portion of Hilton Head Island. The District is governed and managed by a commission whose members are appointed by the Governor upon the recommendation of the Beaufort County legislative delegation. Prior to this Court's decision in *Weaver v. Recreation Dist.*, 328 S.C. 83, 492 S.E.2d 79 (1997), the District levied taxes on property within the District's service area. Appellant Beaufort County collected the taxes.

In *Weaver*, we ruled that the statute which authorized the recreation district's appointed commission to levy a property tax violated the State Constitution's provision forbidding taxation by unelected officials.[2] The general holding from *Weaver* is that any legislative delegation of taxing authority to an **appointed** body unconstitutionally permitted "taxation without representation." *Id.* The *Weaver* Court, however, ordered only prospective relief, stating the following:

> We are cognizant ... of the disruptive effect today's holding could have on the financial operation of numerous special purpose districts, local commissions and boards throughout this state. Accordingly, in order to give the General Assembly an opportunity to address this problem, we hold this decision shall be applied prospectively beginning December 31, 1999.

*Id.* at 87–88, 492 S.E.2d at 82. In response, the Legislature passed legislation in 1998 that removed the taxing power from appointed bodies such as the District's commission. *See* S.C.Code Ann. § 6–11–271 (Supp.2002).

The individual respondents in the instant action represent people who own real and/or personal property located in the District, paid taxes on the property in the years 1995 through 1998, and did not receive water or sewer service from the District.[3] On June 1, 1998, respondents filed their lawsuit. The case has a tortured procedural history;[4] however, re-

---

**2.** *See* S.C. CONST art. X, § 5 ("No tax ... shall be established, fixed, laid or levied, under any pretext whatsoever, without the consent of the people or their representatives lawfully assembled....").

**3.** Additionally, respondents include only those who still do not receive any water or sewer service from the District.

**4.** For example, the case began with two similar complaints filed in state and federal court, each alleging several causes of action. The state

spondents' only remaining cause of action is a 42 U.S.C. § 1983 claim based on an alleged violation of the United States Constitution.[5]

The trial court granted summary judgment in favor of respondents finding that taxation without representation is a violation of the federal Constitution. Specifically, the trial court found that the privilege of no taxation without representation is embodied in Article IV, section 4 of the federal constitution, which guarantees a republican form of government. The trial court noted "it was taxation without representation that spurred on the American Revolution," and therefore could not accept appellants' argument that the federal constitution did not forbid taxation without representation. In addition, the trial court granted respondents' motion for class certification.

## ISSUES

1. Did the trial court err in finding that taxation without representation violates the Republican Guarantee Clause of the United States Constitution?
2. Did the trial court err in certifying the class?

## DISCUSSION

■ Respondents argued to the trial court that "taxation without representation" is not permitted under the United States Constitution. Respondents reasonably continue to con-

---

court case was removed to federal court, consolidated with the federal case, and then eventually remanded to state court. *See Lawyer v. Hilton Head Public Serv. Dist. No. 1*, 220 F.3d 298 (4th Cir.2000), *aff'g Campbell v. Hilton Head No. 1 Public Serv. Dist.*, 114 F.Supp.2d 482 (D.S.C.1999).

5. Section 1983 provides:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to **the deprivation of any rights, privileges, or immunities secured by the Constitution and laws,** shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

(Emphasis added). Thus, the statute creates a civil rights action for the deprivation of a **federal** right.

tend that this founding principle of our nation necessarily is embodied in the federal constitution. Appellants, on the other hand, argue the trial court erred in finding the Republican Guarantee Clause prohibits taxation without representation. Moreover, appellants do not suggest that our nation has abandoned its founding principles, but rather argue that the limited delegation of taxing power that occurred prior to *Weaver* in no way violated a right guaranteed by the **federal** constitution. After reviewing the relevant authorities, we agree with appellants, and reverse the trial court's decision.

The Republican Guarantee Clause of the federal Constitution provides as follows: "The United States shall guarantee to every state in this Union a republican form of government, and shall protect each of them against invasion; and on application of the legislature, or of the executive (when the legislature cannot be convened) against domestic violence." U.S. CONST. art. IV, § 4. By its express terms, this clause does not guarantee against taxation without representation.

Furthermore, "[a]lthough it may surprise innumerable generations of American schoolchildren and adults who have studied the American [R]evolution and the Boston Tea Party, there is firm Supreme Court precedent to support taxation without representation." Samuel B. Johnson, *The District of Columbia and the Republican Form of Government Guarantee*, 37 How. L.J. 333, 337 (1994); *see also* Emily M. Calhoun, *The First Amendment and Distributional Voting Rights Controversies*, 52 Tenn. L.Rev. 549, 574 (1985) ("The Court ... has refused to transmute the Revolutionary slogan 'no taxation without representation' into a constitutional principle.").

Indeed, the United States Supreme Court (USSC) has repeatedly rejected the contention that the federal constitution guarantees no taxation without representation. For instance, in *Heald v. District of Columbia*, 259 U.S. 114, 42 S.Ct. 434, 66 L.Ed. 852 (1922) (Brandeis, J.), residents of the District of Columbia challenged a property tax which Congress levied, arguing it subjected them to taxation without representation. The USSC clearly stated: "There is no constitutional provision which so limits the power of Congress that taxes can be

imposed only upon those who have political representation."
*Id.* at 124, 42 S.Ct. 434.

Likewise, in *Loughborough v. Blake*, 18 U.S. (5 Wheat.) 317
(1820) (Marshall, C.J.), residents of the District of Columbia
challenged the right of Congress to impose a direct tax on the
District. They argued that Congress' right to legislate on
matters related to the District "must be limited by that great
principle which was asserted in our revolution, that represen-
tation is inseparable from taxation." *Id.* at 324. However,
Chief Justice Marshall, writing for a unanimous Court, noted
that it was "obvious" the situation was completely different
from that complained of during the Revolution, and held "that
Congress possesses, under the constitution, the power to lay
and collect direct taxes within the District of Columbia." *Id.*
at 324–25.[6]

*Heald* and *Loughborough* remain good law. Recently, a
three-judge panel of the federal district court rejected a claim
by residents of the District of Columbia that they had a right
to vote for Congress. *Adams v. Clinton*, 90 F.Supp.2d 35
(D.D.C.), *aff'd*, 531 U.S. 941, 121 S.Ct. 336, 148 L.Ed.2d 270
(2000). As part of the extensive discussion on the plaintiffs'
various constitutional claims, the *Adams* court reviewed *Heald*

---

**6.** *See also Thomas v. Gay,* 169 U.S. 264, 18 S.Ct. 340, 42 L.Ed. 740
(1898). In this case, the appellants were non-residents of Oklahoma
who objected to Oklahoma's tax on their personal property—herds of
cattle that were kept and grazed on an Indian reservation in Oklahoma.
The appellants argued the tax constituted taxation without representa-
tion. The USSC commented as follows:

Undoubtedly there are general principles, familiar to our systems of
state and federal government, that the people who pay taxes imposed
by laws are entitled to have a voice in the election of those who pass
the laws, and that taxes must be assessed and collected for public
purposes, and that the duty or obligation to pay taxes by the individu-
al is founded in his participation in the benefits arising from their
expenditure. **But these principles, as practically administered, do
not mean that no person, man, woman, or child, resident or nonresi-
dent, shall be taxed, unless he was represented by some one for
whom he had actually voted, nor do they mean that no man's
property can be taxed unless some benefit to him personally can be
pointed out.** Thus it has been held that personal allegiance has no
necessary connection with the right of taxation; an alien may be
taxed as well as a citizen.... So, likewise, it is settled law that the
property, both real and personal, of nonresidents may be lawfully
subjected to the tax laws of the state in which they are situated.
*Id.* at 276–77, 18 S.Ct. 340 (emphasis added, citation omitted).

and *Loughborough*, as well as other authorities that have rejected "the cry of 'no taxation without representation.' " *Id.* at 55. Interestingly, the court commented as follows on *Loughborough*:

> If there were a Justice who would have been particularly sensitive to this reprise of the Revolutionary War battle cry of "no taxation without representation," surely it would have been Marshall—who served as a company commander at Valley Forge. *See* Jean Edward Smith, JOHN MARSHALL: DEFINER OF A NATION 62–65 (1996). Nonetheless, speaking for a unanimous Court, Marshall held that Congress had the power to tax residents of the District of Columbia despite their lack of representation.

*Id.* The USSC affirmed *Adams.*

Respondents rely on *Kelley v. Metropolitan County Bd. of Educ. of Nashville and Davidson County*, 836 F.2d 986 (6th Cir.1987), *cert. denied*, 487 U.S. 1206, 108 S.Ct. 2848, 101 L.Ed.2d 885 (1988), in support of their argument. In *Kelley,* the court held that the federal district court erred in ruling that the state of Tennessee, as opposed to the local school board, should bear certain costs of school desegregation. In dicta, the *Kelley* court commented as follows:

> In language of majestic simplicity, our Constitution provides that "The United States shall guarantee to every State in this Union a Republican Form of Government...." U.S. Const. Art. IV, § 4. A "republican" form of government, as Madison suggested in Number Ten of the Federalist Papers, is "a Government in which the scheme of *representation* takes place." (Emphasis supplied.) In few (if any) areas of government is Madison's "scheme of representation" more important than it is in the area of government finance and taxation. A principal cause of our Revolutionary War, after all, was the imposition of taxes without representation. The concept that "taxation without representation is tyranny" was one for which a number of the Framers had put their very lives on the line. Our Constitution was not adopted to perpetuate the evil that led us to break our ties with the British Crown.

*Id.* at 997. *Kelley,* however, is inapposite to the issue in the instant case. The *Kelley* court was concerned with a federal judge apportioning state money the court felt was more appropriately done by the legislative branch. *Kelley* did not resolve the issue of whether there is an independent, federal right to no taxation without representation.

█ Accordingly, while the American Revolution may have been spurred on by the rallying cry 'no taxation without representation,' the federal Constitution that was subsequently drafted contained no express provision guaranteeing that as a right. In contrast, this Court has interpreted the South Carolina constitution as clearly prohibiting taxation without representation. *See, e.g., Weaver, supra.* Respondents simply cannot rest on the *Weaver* holding for their federal section 1983 claim. Because we find there is no **independent, federal right** found in the Republican Guarantee Clause prohibiting taxation without representation, respondents have no available section 1983 action against appellants.[7]

We therefore hold the trial court erred in granting summary judgment to respondents; instead, summary judgment should have been granted in appellants' favor. Given this conclusion, we need not address the issue of whether the trial court erred in certifying a plaintiff class.

**REVERSED.**

TOAL, C.J., MOORE, BURNETT, JJ., and Acting Justice John W. Kittredge, concur.

---

7. In addition, we note that claims made pursuant to the Republican Guarantee Clause generally have been held by the USSC to be nonjusticiable, political questions. *See, e.g., Pacific States Tel. & Tel. Co. v. Oregon,* 223 U.S. 118, 32 S.Ct. 224, 56 L.Ed. 377 (1912); *see also Baker v. Carr,* 369 U.S. 186, 223–24, 82 S.Ct. 691, 7 L.Ed.2d 663 (1962) (stating the USSC has "consistently held that a challenge to state action based on the Guaranty Clause presents no justiciable question") (and cases cited therein); *Adams v. Clinton,* 90 F.Supp.2d at 71; *but see New York v. United States,* 505 U.S. 144, 185, 112 S.Ct. 2408, 120 L.Ed.2d 120 (1992) (questioning whether all claims under the Republican Guarantee Clause present nonjusticiable, political questions).