626 S.E.2d 19

**SOUTHERN GLASS & PLASTICS CO., Respondent,**

v.

**Angela DUKE, Appellant.**

**No. 4057.**

Court of Appeals of South Carolina.

Heard Oct. 11, 2005.

Decided Dec. 12, 2005.

Rehearing Denied Feb. 16, 2006.

---

424

Manton M. Grier, Jr., Victoria L. Eslinger, and Susan B. Lipscomb; all of Columbia, for Appellant.

Charles E. Carpenter, Jr., and Harry A. Swagart, III; both of Columbia, for Respondent.

HEARN, C.J.:

Southern Glass & Plastics Co. instituted an action against Angela Duke, one if its former employees, seeking to recover money it alleges she distributed without authorization. Angela denied the allegations and asserted numerous counterclaims. The trial court granted summary judgment for Southern Glass on Angela's defenses of waiver and estoppel, and on her counterclaims for outrage, abuse of process, and wrongful termination. The trial court also granted partial summary judgment on Angela's counterclaim for defamation. Angela appeals from this order, and we affirm in part and reverse in part.

## FACTS

Angela worked as the administrative office manager for Southern Glass from May 1992 until her termination in October 2001. For the majority of the time Angela worked there, Alan and Joanne Epley each had a fifty percent ownership interest in the company. Joanne was Angela's immediate supervisor.

At some point, the Epleys' relationship soured, and from 2000 to 2001, they were involved in both a divorce action and a shareholder derivative action. While the couple's divorce was pending, an order was issued in the derivative action which required Alan and Joanne to discuss and come to an agreement on issues such as hiring, firing, promoting, demoting, changing compensation, and awarding benefits. Several months after the order was issued, Joanne sent a copy of it to Angela with a cover memo explaining that "there are to be no changes in compensation of any managerial level employees without agreement between Alan Epley and Joanne Epley...." After receiving the memo, Angela conferred with a human resource consultant who told her the order applied to the actions of Joanne and Alan, but not to her own actions.

In June of 2001, Angela e-mailed Joanne to ask about the status of her bonus, which Angela had received every year since 1996. Joanne replied via e-mail, explaining Southern Glass had not performed as well as expected, and therefore, Angela would not be receiving a bonus this year. Six weeks later, however, Joanne e-mailed Angela announcing that Southern Plastics was now showing a profit. Because the company's numbers had improved, Joanne directed Angela to include a $4,500 bonus for herself and a $6,500 bonus for another employee (who happened to be Joanne's sister) on the payroll transmission for August 13, 2001. Angela did so, and Joanne signed the checks.

After the checks had been prepared, but one day prior to their disbursement, Alan told Angela to disobey any instructions Joanne had given her regarding checks. According to Angela, this directive was issued by Alan because two insurance checks had been voided and re-cut, and he wanted information on the two additional checks. Alan, however, claims that he specifically asked Angela about the bonus payments, and she told him she knew nothing about them.

In the early fall of 2001, the Epleys settled their divorce action. In the settlement, Joanne agreed to sell Alan her interest in Southern Glass. On October 4, 2001, Joanne, Alan, and Southern Glass executed a release in which all parties agreed to "forever discharge each other, together with any and all of their ... employees ... who are or may be

responsible for or jointly or severally liable for the same, from any and all liabilities, causes of action, [and] claims . . . that they have asserted or could have asserted in [the divorce proceeding or shareholder derivative suit]." The release further explains that its intent is to "fully and finally release all other parties from any and all claims, past, present, or future, arising from or connected with the issues and transactions arising out of the relationship among the parties as set forth in [the divorce proceedings or shareholder derivative action]."

Within three weeks of signing the release, Alan called Angela into his office and demanded she repay her bonus. She refused, and Alan fired her. After her termination, Angela applied for unemployment benefits. Southern Glass challenged her application, and turned the unemployment claim over to the human resource consultant group it had on retainer to handle employment-related issues. In a handwritten letter to the consultant group, Alan alleged Angela was fired for, among other things, theft, forgery, and taking money under false pretenses. The consultant group incorporated parts of Alan's letter into its own letter to the South Carolina Employment Security Commission, but ultimately, the Commission found in Angela's favor and awarded benefits.

Alan wrote a letter to Angela in January of 2002, demanding she return her 2001 bonus. Because Angela did not return the money, Southern Glass initiated an action in magistrate's court, seeking the repayment of both her bonus and the bonus paid to Joanne's sister. Together, these bonuses amounted to $11,000. Angela filed an Answer denying Southern Glass's allegations and asserting numerous counterclaims. She also filed a motion to transfer the case to the court of commons pleas, which was granted.

Once the case was transferred, both Southern Glass and Angela made motions for summary judgment. The trial court granted summary judgment in favor of Southern Glass on Angela's defenses of waiver and estoppel and her counterclaims for outrage, abuse of process, and wrongful termination. The court also granted partial summary judgment in favor of Southern Glass on Angela's counterclaim for defamation, finding communications between Southern Glass and its human resources consultant were absolutely privileged. How-

ever, the court refused to grant summary judgment with regard to false statements Alan allegedly made to a friend. This appeal, filed by Angela, followed.

## STANDARD OF REVIEW

"The purpose of summary judgment is to expedite the disposition of cases which do not require the services of a fact finder." *George v. Fabri,* 345 S.C. 440, 452, 548 S.E.2d 868, 874 (2001). When reviewing the grant of a summary judgment motion, this court applies the same standard which governs the trial court under Rule 56(c), SCRCP: summary judgment is proper when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *Fleming v. Rose,* 350 S.C. 488, 493, 567 S.E.2d 857, 860 (2002).

In determining whether a triable issue of fact exists, the evidence and all factual inferences drawn from it must be viewed in a light most favorable to the nonmoving party. *Sauner v. Pub. Serv. Auth.,* 354 S.C. 397, 404, 581 S.E.2d 161, 165 (2003). Even if there is no dispute as to evidentiary facts, but only as to the conclusions or inferences to be drawn from them, summary judgment should be denied. *Baugus v. Wessinger,* 303 S.C. 412, 415, 401 S.E.2d 169, 171 (1991). Summary judgment is not appropriate when further inquiry into the facts of the case is desirable to clarify the application of law. *Tupper v. Dorchester County,* 326 S.C. 318, 325, 487 S.E.2d 187, 191 (1997).

## LAW/ANALYSIS

### I. Release Defense

■ Angela claims the trial court erred in failing to find the release Southern Glass signed constituted a waiver to its claims against her. We agree.

■ By signing the release, Alan, Joanne, and Southern Glass agreed to:

mutually release, acquit, and forever discharge each other, together with any and all ... employees ... who are or may be responsible for or jointly or severally liable for ... all liabilities, causes of action, [and] claims ... known or

unknown, now existing or which may accrue hereafter, against any of the parties ... which they now have, have had in the past, or may have in the future ... and any other claim that they have asserted or could have asserted in the [the divorce and shareholder derivative actions].

There is no dispute that Angela was an employee of Southern Glass at the time this release was signed.[1] What is disputed is whether Southern Glass's cause of action against Angela was intended to be waived when the parties signed this release. The trial court found the claim against Angela was not waived because the release "applies **only** to claims that could have been asserted in the divorce or shareholder derivative action." (Emphasis in original.) We do not believe the parties, at the time they signed the release, intended for it to be so narrowly construed.

 A release is a contract, and the scope of a release is gathered by its terms. *Gardner v. City of Columbia Police Dep't*, 216 S.C. 219, 223, 57 S.E.2d 308, 309 (1950); *Bowers v. Dep't of Transp.*, 360 S.C. 149, 600 S.E.2d 543 (Ct.App.2004). "In construing [a] release, the court must seek to ascertain and give effect to the intention of the parties." *The Wilson Group, Inc. v. Quorum Health Resources, Inc.*, 880 F.Supp. 416, 425 (D.S.C.1995).

Here, the release itself reveals the parties' intent:

[I]t being the intent of this Release for all parties to fully and finally release all other parties from any and all claims, past, present, or future, arising from or connected with the issues and transactions arising out of the relationship among the parties as set forth in [the divorce and shareholder derivative actions].

---

1. Although no one disputes that Angela was an employee of Southern Glass at the time the release was signed, Southern Glass nevertheless argues we should not allow a non-signatory to benefit from the release. However, the clear language of the release includes employees of the signatories, and "[p]ublic policy does not require consideration from each party where a general release purports to release not only the paying party, but all other potential defendants, from any and all future liability." 76 C.J.S. *Release* § 9 (1994); *see also Hyman v. Ford Motor Co.*, 142 F.Supp.2d 735, 742 (D.S.C.2001) (upholding a release even though beneficiary did not provide consideration).

This language makes clear the parties' intent to release all other parties from any claim connected to the transactions arising out of the divorce action and shareholders' derivative action. Here, the foundation of Southern Glass's cause of action against Angela is the order from the derivative action requiring mutual agreement between Alan and Joanne. Absent that order, Angela would unquestionably have been authorized to issue the bonus checks once Joanne gave her that directive. Thus, Southern Glass's claim against Angela is "connected with . . . transactions arising out of the relationship among the parties as set forth in [the shareholder derivative action]," and therefore, the parties intended it to be covered by the release.

Accordingly, we find the trial court erred in granting summary judgment in favor of Southern Glass on Angela's defense of waiver. Instead, we find Southern Glass's claim against Angela is barred, and therefore, summary judgment should have been entered in Angela's favor.[2] *See Campbell v. Hilton Head No. 1 Pub. Serv. Dist.*, 354 S.C. 190, 197, 580 S.E.2d 137, 141 (2003) (reversing trial court's grant of summary judgment in favor of respondent, and instead finding "summary judgment should have been granted in appellants' favor").

## II. Privilege to Defamation

Next, Angela argues the trial court erred by concluding the statements Southern Glass made to its human resources consultant, who it hired to dispute Angela's claim for unemployment, were absolutely privileged. We disagree.

Section 41–27–560 of the South Carolina Code (1986) provides that communications made from an employer to the Employment Commission, or any of its agents, representatives, or employees, in connection with an application for unemployment compensation, are privileged. Angela argues the statute only protects statements made to agents of the Commission, not statements made to agents of the employer.

We find Angela's interpretation illogical considering business entities must always use either an employee or agent

---

2. Because we propose to find the release applies to Southern Glass's cause of action against Angela, we need not address her estoppel argument.

to communicate with the Commission. Furthermore, the principles of common law provide that an absolute privilege is not lost simply because an agent is used. *See Rodgers v. Wise,* 193 S.C. 5, 9, 7 S.E.2d 517, 518–19 (1940) (holding the attorney-client privilege was not waived when an attorney dictated a letter to a stenographer). Because "[a] statute is not to be construed as in derogation of common-law rights if another interpretation is reasonable," [3] we agree with the trial court that section 41–27–560 applies to the statements Southern Glass made to its human resource consultant. Accordingly, we find no error in its grant of partial summary judgment on Angela's counterclaim for defamation.

## III. Abuse of Process

■ Angela next argues the trial court erred by granting summary judgment on her counterclaim for abuse of process. We disagree.

■ To overcome summary judgment on her counterclaim for abuse of process, Angela must show there was some evidence Southern Glass had an ulterior purpose for filing its suit against her, and Southern Glass committed some "willful act not proper in the regular course of the proceeding." *Hainer v. Am. Med. Int'l, Inc.,* 328 S.C. 128, 136–37, 492 S.E.2d 103, 107 (1997). "[L]iability [for abuse of process] exists not because a party merely seeks to gain a collateral advantage by using some legal process, but because the collateral objective was its sole or paramount reason for acting." *Food Lion, Inc. v. United Food & Commercial Workers Int'l Union,* 351 S.C. 65, 75, 567 S.E.2d 251, 256 (Ct.App.2002). Furthermore, "[t]here is no liability where the defendant has done nothing more than carry out the process to its authorized conclusion, even though with bad intentions." *Hainer,* 328 S.C. at 136, 492 S.E.2d at 107.

■ Even assuming without deciding there was some evidence Southern Glass had an ulterior motive for bringing this action against Angela, there is no evidence Southern Glass engaged in a "willful act," an element essential to the abuse of process cause of action. The willful act element requires

---

**3.** *Doe v. Marion,* 361 S.C. 463, 473, 605 S.E.2d 556, 561 (Ct.App.2004).

"[s]ome definite act ... not authorized by the process or aimed at an object not legitimate in the use of the process." *Id.* Here, Southern Glass filed a lawsuit seeking to collect the money it alleges Angela disbursed without authorization. There is no evidence Southern Glass engaged in any improper acts during the course of the proceeding, and we find the trial court correctly granted summary judgment in its favor on Angela's counterclaim for abuse of process.

## IV. Wrongful Termination

Finally, Angela argues the trial court erred by granting summary judgment in favor of Southern Glass on her counterclaim for wrongful termination. Specifically, she argues there was evidence her termination violated public policy because it was based on her refusal to pay back a duly earned wage. We disagree.

Although Angela was an at-will employee and therefore could be terminated at any time, for any reason, even at-will employees can bring a cause of action for wrongful termination when the employer's reason for termination violates a clear mandate of public policy. *Ludwick v. This Minute of Carolina, Inc.,* 287 S.C. 219, 225, 337 S.E.2d 213, 216 (1985). Our courts have found the public policy exception to clearly apply in cases where the employer either (1) requires the employee to violate the law, or (2) the reason for the employee's termination is itself a violation of criminal law. *Lawson v. South Carolina Dep't of Corrections,* 340 S.C. 346, 350, 532 S.E.2d 259, 260 (2000). Angela argues there was evidence in the record supporting her counterclaim for wrongful termination because (1) her refusal to repay the bonus was the reason she was fired; (2) the Payment of Wages Act requires employees to pay all wages when due; (3) her bonus was a duly earned wage; and (4) it would be a violation of law to require an employee to return a duly earned wage in order to continue her employment.

According to the Payment of Wages Act, employers are required to pay all wages when due. S.C.Code Ann. § 41–10–40(a) (Supp.2004). However, employers may withhold disputed wages. S.C.Code Ann. § 41–10–60. Here, Angela's entitlement to her bonus was clearly disputed. Because Southern

Glass would have been able to withhold the bonus pursuant to the Act, we believe it was not a clear violation of public policy for it to request that Angela return the bonus. Accordingly, we find no error in the trial court's grant of summary judgment in favor of Southern Glass on Angela's counterclaim for wrongful termination.

## CONCLUSION

We find the trial court erred in granting summary judgment to Southern Glass on Angela's defense of waiver; instead, summary judgment should have been granted in Angela's favor. However, we agree with the trial court's grant of summary judgment in favor of Southern Glass on Angela's counterclaims for defamation, abuse of process, and wrongful termination. Accordingly, the order of the trial court is

**AFFIRMED IN PART and REVERSED IN PART.**

STILWELL and KITTREDGE, JJ., concur.