711 S.E.2d 892

**Ex parte Johns DOE C, D, H, J, K, L, M, and B; Janes Doe G, I, and M; and the mother of John Doe J, Appellants,**

**In re John Doe # 53, John Doe # 66, John Doe # 66A, John Doe # 67, Jane Doe 1, Jane Doe 2 and Rachel Roe, individually and as representatives of classes of people similarly situated, Respondents,**

v.

**The Bishop of Charleston, a Corporation Sole, and the Bishop of the Diocese of Charleston, in his official capacity, Respondents.**

No. 26984.

Supreme Court of South Carolina.

Heard Feb. 3, 2011.

Decided June 13, 2011.

148

Gregg Meyers, of Charleston, for Appellants.

David K. Haller and Lawrence E. Richter, Jr., of Mt. Pleasant, for Respondents John Doe # 53, et al.

A. Peter Shahid, Jr., of Charleston, for Respondents the Bishop of Charleston, a Corporation Sole, et al.

PER CURIAM.

This appeal follows a long and complex series of motions related to a class action settlement that was administered in Dorchester County. The underlying class action dealt with allegations that certain minors were victims of sexual abuse at the hands of agents of the Diocese of Charleston.[1] Appellants objected to and opted out of the class action, then reached an independent settlement with the Diocese. Pursuant to that settlement, Appellants executed releases that explicitly discharged *all* claims against the Diocese. We dismiss this appeal as moot.

I.

The plaintiffs in the underlying class action consisted of two classes: one for victims of childhood sexual abuse by agents of the Diocese and one for the spouses and parents of victims. As chief administrative judge for Dorchester County, Judge Goodstein designated the case "complex," and she assigned

---

1. For simplicity, we refer to both "the Bishop of Charleston, a Corporation Sole," and the Bishop of the Diocese of Charleston, in his official capacity, as "the Diocese."

herself exclusive jurisdiction over it. Judge Goodstein subsequently approved a settlement in the class action over Appellants' objections. Appellants moved to alter or amend the order approving the settlement.

While Appellants' motion to alter or amend was pending, they reached a separate settlement agreement ("the opt-out agreement") with the Diocese and class counsel. This agreement provided that the Diocese would pay Appellants $1.375 million to settle their claims, in exchange for Appellants' agreement to opt out of the class action, execute releases, and withdraw all pending motions and objections with prejudice. Judge Goodstein entered an order dated August 31, 2007, approving the agreement and adopting it as the order of the court to the extent that it resolved the pending motions and objections.

On March 6, 2008, Appellants filed a complaint in Charleston County alleging payment was due under the opt-out agreement. Because the opt-out agreement arose from the Dorchester County class action, the Diocese moved to enforce the opt-out agreement in Dorchester County and to deposit the $1.375 million with the Dorchester County clerk of court. Appellants moved to dismiss the Diocese's Dorchester County motions and moved for Judge Goodstein to recuse herself.

Judge Goodstein held a hearing on these motions on January 29, 2009. After Judge Goodstein orally denied Appellants' motions to dismiss and to recuse, Appellants moved to compel the Diocese to pay the $1.375 million plus pre or postjudgment interest.

Following the January 29 hearing, and while Appellants' motions for interest remained under advisement, Appellants signed releases bearing the title "FULL AND COMPLETE RELEASE," which provided in relevant part:

> For and in consideration of my having received payment ... I hereby release, acquit, and forever discharge: The Diocese of Charleston ... from any and all actions, causes of action, claims, demands, damages, costs, loss of services, expenses and compensation, up to and including the date of this release, on account of, or in any way growing out of:
> 1. The obligations under the letter agreement dated August 30, 2007, incorporated into and adopted as an order

of the Dorchester County Court of Common Pleas dated August 31, 2007 ...;

. . . .

3. Any and all claims and/or allegations contained in or relating to the civil action styled *Johns Doe C et al. v. The Diocese of Charleston, et al.* ... now pending in the Court of Common Pleas for the Ninth Judicial Circuit (the "Charleston case"), or which could have been alleged in the Charleston case;

4. Further, in consideration of said payment, I do hereby authorize and direct my attorney to dismiss with prejudice the Charleston case, now pending in the Circuit Court for Charleston County.

. . . .

It is further understood and agreed that there is no promise or agreement on the part of the persons, firms and corporations who are hereby released to do or omit to do any act or thing not herein mentioned, that this Release contains the entire agreement between the parties hereto, and that the terms of this Release are contractual and not a mere recital.

The releases were provided to the Dorchester County clerk of court in exchange for payment of the $1.375 million on deposit with the clerk. As a result, Appellants' counsel received the funds due under the opt-out agreement. Thereafter, by order dated March 23, 2009, Judge Goodstein ended the matter and denied Appellants' motions for pre and postjudgment interest.

Appellants now appeal the denial of their motions and raise challenges to the class action settlement from which they opted out. We certified the appeal pursuant to Rule 204, SCACR.

## II.

Appellants opted out of the class action settlement, released all claims against the Diocese, and received payment in exchange for their releases. Thus, as a practical matter, the only relief Appellants could receive from a judgment in their favor is an award of prejudgment interest.[2] However, Appel-

---

**2.** If Appellants were entitled to interest, it would be prejudgment interest, not postjudgment interest, because the funds due under the

lants waived any right to interest when they signed releases discharging the Diocese from liability for all "actions, causes of action, claims, demands . . . and compensation, **up to and including the date of th[e] release.**" The releases did not reserve any rights as to any pending motions. Rather, by their plain language, the releases resolved **all** of Appellants' claims. *See Southern Glass & Plastics Co. v. Duke*, 367 S.C. 421, 428, 626 S.E.2d 19, 22 (Ct.App.2005) ("A release is a contract, and the scope of a release is gathered by its terms." (citing *Gardner v. City of Columbia Police Dep't*, 216 S.C. 219, 223, 57 S.E.2d 308, 309–10 (1950))). Therefore, this appeal is moot. *Sloan v. Friends of the Hunley, Inc.*, 369 S.C. 20, 26, 630 S.E.2d 474, 477 (2006) ("A moot case exists where a judgment rendered by the court will have no practical legal effect upon an existing controversy because an intervening event renders any grant of effectual relief impossible for the reviewing court.").

Moreover, while Appellants now present us with complaints about the administration of the class action, Appellants opted out of the class and thus could not be harmed by any of the irregularities they allege. In fact, Appellants assert their opt-out agreement afforded them more favorable relief than the class action settlement would have. Thus, Appellants can claim no harm from the manner in which the class action settlement was handled. *See Bivens v. Knight*, 254 S.C. 10, 13, 173 S.E.2d 150, 152 (1970) ("A party . . . cannot appeal from a decision which does not affect his interest, however erroneous and prejudicial it may be to the rights and interests of some other person.").

At oral argument, perhaps in recognition of the fact that Appellants have waived all claims by their releases, Appellants' counsel insisted that this appeal was not moot because John Doe B did not sign the release quoted above. This assertion is without merit. John Doe B's claim is not before this Court. John Doe B did not fall within the definition of the class, nor was he a party to the opt-out agreement the

---

opt-out agreement were not payable immediately upon entry of the August 31, 2007, order. The opt-out agreement provided: "The $1.375 million will be paid from the surplus funds, if any, after the [class action] claims process has been completed.... Payment is expected sometime after January 1, 2008."

Diocese sought to enforce. Rather, it appears that the Appellants may have agreed among themselves to distribute a portion of their settlement to John Doe B. No exceptions to the order on appeal were made on John Doe B's behalf, and Appellants' counsel conceded at oral argument that John Doe B's separate claim against the Diocese has been resolved by agreement and John Doe B has signed a release. In sum, the attempt by Appellants to resurrect this appeal through John Doe B is without merit.

### III.

We dismiss this appeal as moot. Appellants executed full and complete releases without any reservation of rights, and they received the funds due to them under the opt-out agreement in return. Moreover, Appellants have no stake in the issues they raise regarding the class action settlement because they opted out of the class. Thus, a decision in Appellants' favor would have no practical effect.

**APPEAL DISMISSED.**

TOAL, C.J., PLEICONES, BEATTY, KITTREDGE and HEARN, JJ., concur.